CENTRAL NATIONAL BANK OF LINCOLN, APPELLEE, V. FIRST
NATIONAL BANK OF GERING ET AL., APPELLANTS.
FILED JUNE 8, 1928.  No. 25214.

*Morrow & Morrow*, for appellants.

*Field, Ricketts & Ricketts, Honnold & Clarke* and *Moth-
ersead & York*, contra.

*Fred S. Berry*, amicus curiæ.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON,
EBERLY and HOWELL, JJ.

HOWELL, J.

This case was appealed from a decree of the lower court
impressing a trust, in favor of the Central National Bank
of Lincoln, upon the assets of the First National Bank of
Gering, in the hands of Charles F. Lyman, receiver, grow-
ing out of four notes sent by the Lincoln bank to the Gering
bank, while open for business, for collection and remittance
of proceeds.

After being twice argued orally here, Good, J., wrote
an opinion (115 Neb. 444), in which Dean, Thompson
and Eberly, JJ., concurred, reversing the lower court over
a dissenting opinion by Rose, J. (115 Neb. 451), in which
Goss, C. J., and Day, J, concurred.  Eberly, J., wrote a

separate concurring opinion (115 Neb. 457). After a third oral argument, Rose, J., delivered an opinion (115 Neb. 472) in which the former opinion was overruled, to which Good, Thompson and Eberly, JJ., dissented (115 Neb. 478). Since that time, Day, J., died and the writer has been added to the court in his stead. A fourth oral argument has been made to the court as it is at present constituted.

The writer has spent a prodigious amount of time in the examination of the record, numerous briefs, adjudicated cases and the several opinions written by members of this court in this case, and is not disposed to add very much to its literature. To harmonize the multiplied decisions of state and federal courts would be an impossible task.

The alleged trust fund has to do with the assets of an insolvent national banking institution being administered by a receiver under laws of congress. Sections 3234, 5236, U. S. Rev. St. (1878), provide for winding up the affairs of such banks and for a ratable distribution of their assets among creditors. What are assets presents a federal question which necessarily must be determined by the national courts or by rules approved by them. *Empire State Surety Co. v. Carroll County*, 194 Fed. 593, 603 (5). The same case holds: "It is indispensable to the maintenance by a *cestui que trust* of a claim to preferential payment out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds went into a specific fund or into a specific identified piece of property which came to the hands of the receiver, and then the claim can be sustained to that fund or property only, and only to the extent that the trust property or its proceeds went into it. It is not sufficient to prove that the trust property or its proceeds went into the general assets of the insolvent estate and increased the amount and value thereof which came to the hands of the receiver." It is supported by *State Bank of Winfield v. Alva Security Bank*, 232 Fed. 847, *Dudley v. Richards*, 18 Fed. (2d) 876, and other cases.

The writer has been very reluctantly driven to the foregoing conclusions as to national banks, but withholds commitment as to trust funds not imperatively ruled by federal law. The judgment of the district court is reversed and the cause remanded.

REVERSED.

GOSS, C. J., and DEAN, J., dissent.

ROSE, J., dissenting.

If the appeal presents a, federal question, an imperative duty calls for the independent judgment of each member of the court in determining the issue, because the supreme court of the United States, as I understand the' situation, has not spoken the final word on the subject and the federal courts inferior to that tribunal do not agree on the proper solution.

I am unwilling to surrender my own ideas of justice and equity for what I conceive to be .a fundamental error that will disturb the banking and other financial interests and perpetuate in the judicial department of government an evil at variance with established rules of equity and the demands of justice. I deny that the congress or the federal courts have committed state courts to the doctrine announced by the majority of my associates.

The present action is one in equity to restore trust funds misappropriated by a faithless trustee. The facts on which the diversity of opinion arose were formerly stated as follows:

"The First National Bank of Gering, defendant, received from the Central National Bank of Lincoln, plaintiff, and accepted three promissory notes, aggregating with interest $4,467.23, for the sole purpose of collecting and returning the amounts due plaintiff, the owner. To that purpose alone defendant was specifically limited in writing and became a trustee to perform the duty of a fiduciary while openly transacting a banking business. Defendant collected the notes, betrayed its trust, clandestinely credited to plaintiff on its books the proceeds of the notes, hid the trust funds in a wilderness of banking assets exceed--

ing on paper $440,000, where the converted trust property could not be identified, misappropriated the credits, wrecked the bank, went into the hands of a receiver and challenged plaintiff to trace its trust funds into a specific asset of the insolvent bank on penalty of having them taken by the general creditors of defendant. The proceeds of plaintiff's notes augmented the deposits in the insolvent bank, increased the general assets, replenished the depleted bank reserve and paid banking obligations to general creditors." *Central Nat. Bank v. First Nat. Bank,* 115 Neb. 444, 452.

The converted proceeds of the notes were traced into the possession of the dishonest trustee. The effect of the majority opinion is to saddle on the innocent and confiding beneficiary of the trust the burden of showing what the trustee did with the plaintiff's or the beneficiary's trust fund after it had been misappropriated and mingled with a mass of banking assets over which plaintiff, the owner, had no control. This is contrary to the universal rule of equity that it is the duty of a trustee to disclose to his beneficiary what became of the trust property and to account for it. The philosophy on which this latter precept is based came down through the centuries from the Chancellor of Galilee Who dictated the hallowed petition, "Lead us not into temptation," and Who decreed, "No man can serve two masters." This violated rule requiring a disclosure by the trustee himself sparkles in the dust of evolutional equity like polished diamonds in the rubbish of ages. Departing therefrom the majority announce the following doctrines:

"A *cestui que trust,* who seeks a preference out of the estate of an insolvent national bank in the hands of a receiver, must clearly prove that the trust property, or its proceeds, went into a specific fund or property which came into his hands.

"In such case, it is not sufficient to trace the trust property to the general assets of the estate and that it increased the value thereof." *Central Nat. Bank v. First Nat. Bank, ante,* p. 161.

The attempt to justify those rulings includes an act of the congress relating to distribution of the assets of insolvent national banks, and also the enforcement of that act by a federal court which is not the final arbiter on the question here presented for determination. If the question were controlled by federal precedents, which I deny, the language used by another federal court and quoted with approval by a chief justice of the United States supreme court is better authority and has the support of cogent reasons:

"Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor." *Peters v. Bain*, 133 U. S. 670, 693.

This doctrine is in harmony with a unanimous opinion of the supreme court of Nebraska, as shown by the following syllabus:

"Where a trustee mingles trust moneys with his own funds, *cestui qui trust* is entitled to a charge upon the whole; and so long as any portion of the mass into which the trust fund has entered remains in any form, it is subject to such charge, and may be followed and claimed." *City of Lincoln v. Morrison*, 64 Neb. 822.

Trust funds belonging to an innocent and confiding owner or beneficiary, when stolen or embezzled by an insolvent national bank acting in the capacity of trustee, and hid by it in a changed form among the general assets of the

bank are not bank assets in the hands of the receiver for the purpose of distribution to general creditors, within the meaning of the act of congress. If such a fund is not among the bank assets after it is traced by the beneficiary into them, the burden is on the dishonest trustee or the receiver to disclose that fact. The federal statute did not change the rules of evidence or the burden of proof or take away the accountability of the trustee as such. The federal Constitution protects the liberty to own and control property and neither the congress nor the court has power to take trust property from its hiding place, deprive the owner of it, and with it pay other debts of the false trustee.

I do not find in the federal statute anything to justify the rulings of the majority, nor do I impute to the legislative department of the federal government an intent to apply to the claims of general creditors private trust funds unlawfully in the assets of an insolvent national bank against the will of the owner. In absence of a ruling of the supreme court of the United States to the contrary, I shall attribute to the national congress the policy declared by Washington in his first inaugural address:

"The foundation of our national policy will be laid in the pure and immutable principles of private morality. There is no truth more thoroughly established than that there exists in the economy and course of nature an indissoluable union between virtue and happiness; between duty and advantage; between the genuine maxims of an honest and magnanimous policy and the solid rewards of public prosperity and felicity."

I adhere to what was said by this court in the opinion affirming the decree in favor of plaintiff for the restoration of the trust funds in controversy. *Central Nat. Bank v. First Nat. Bank*, 115 Neb. 472.