STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. FARMERS STATE BANK OF POLK, APPELLANT: EDWARD A. LINDQUIST, INTERVENER, APPELLEE.

FILED JULY 17, 1931. No. 27376.

*C. M. Skiles* and *I. D. Beynon*, for appellant.

*H. G. Wellensiek* and *Paul E. Boslaugh, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

ROSE, J.

In a proceeding in the district court for Polk county to wind up the affairs of the Farmers State Bank, an insolvent banking corporation, Edward A. Lindquist intervened and presented a petition for the allowance of $4,500 as a preferred claim payable in full out of the general mass of assets in control of the receiver.

The claim as pleaded arose in the following manner: For a valuable consideration intervener executed and delivered to the Farmers State Bank, July 3, 1928, his promissory note for $4,500, payable October 1, 1928, and that bank sold and delivered it to the Harvard State Bank.

To pay the note by renewal, intervener executed and delivered a new note to the Farmers State Bank for $4,500, October 5, 1928, and the latter sold and delivered it to the First National Bank of Stromsburg; received for it $4,500, and failed to pay therewith the original note; converted the $4,500 received for the renewal note, without the knowledge or consent of intervener; augmented to that extent the funds in the Farmers State Bank; mingled the converted proceeds of the renewal note with bank assets which fell into the hands of the receiver. Intervener prayed for an order restoring his converted funds and directing the receiver to pay them in full. The answer of the receiver to the petition of intervener was a general denial. A trial of the issues resulted in a judgment granting intervener the relief prayed by him. The receiver appealed to the supreme court.

It is argued that the judgment of the district court is erroneous for the reason that, subject to taxes, the statute gives priority to unsecured depositors in state banks and makes their claims first liens on all assets of the insolvent bank from the time it was closed. Comp. St. 1929, sec. 8-1,102. The argument on this point was ably presented in good faith, but is not conclusive, if the converted proceeds of intervener's note were never assets belonging to the bank, within the meaning of the statute. The transactions in which the bank procured, converted, mingled and used the funds of intervener are material factors in the present inquiry. There is no dispute about any essential fact. Intervener entrusted his renewal note to the Farmers State Bank for the sole purpose of paying the original note. The renewal note was accepted by the Farmers State Bank, hereinafter called "the bank," payee in both notes, for that identical purpose and could not lawfully be otherwise used. The bank thus became a trustee to pay the original note with the renewal note and to return the former note to the intervener. It betrayed its trust; sold the renewal note; took the proceeds—$4,500;

converted the funds without the knowledge or consent of intervener, the beneficial owner; put the equivalent of intervener's proceeds in money in the bank and made the bank books show an increase in its cash and its sight exchange to the extent of $4,500; used the converted funds in the regular course of the banking business; failed to pay the original note and refused to restore to intervener any part of the proceeds of the renewal note. Intervener paid his original note, but did not ratify any unlawful act of the bank, his trustee, in regard to the renewal note, or condone the betrayal of trust, or demand the converted proceeds as deposits. In relation to these funds he was not a depositor. He did not participate in any dishonest or unlawful act. He did not make any agreement authorizing the bank, his trustee, to use his credit or proceeds or money in the banking business. His property was not impounded on any mesne or final process known to the law. By the illegal acts of his trustee, intervener did not lose his title to his own property or his equitable right to follow and reclaim it in a changed form. The bank never acquired intervener's title nor a right to use his credit or proceeds or money in the banking business. In equity his converted property was never a bank asset to which depositors had a right to resort for payment of their general deposits. It was the continuing duty of the bank as a trustee, from the moment intervener's property or its equivalent in money was unlawfully put into its tills, to disclose that fact to the beneficiary and restore it to him or apply it to the specific use for which it was intended. To that standard of accountability equity holds the trustee.

A bank which exercises power emanating from the state by means of legislation and a public charter has no immunity from obligation, duty or business rectitude, while acting in a fiduciary capacity. Contrary to the terms of a trust, a bank has no authority to convert trust property or the equivalent thereof, or to deposit it to its own credit,

or to mingle it with bank assets, or to use it in the general course of the banking business, or to deprive the beneficial owner of it, or to create a fund, by betrayal of trust, to pay general depositors in the event of insolvency. The trust fund, in its original or changed form, belongs to the beneficial owner, and it is the duty of a court of equity, upon proper pleading and proof, to restore the fund to him.

If the statute is construed to authorize the receiver to appropriate any part of intervener's trust funds to the claims of general depositors, it will prevent the exercise of chancery power conferred upon district courts by the Constitution of Nebraska and to that extent will be void. Lack of legislative power to limit chancery jurisdiction was illuminated in a recent opinion by Judge Eberly, who said:

"It may be said that, by the terms of the Constitution, district courts in Nebraska are vested with 'chancery jurisdiction.' Const. art. V, sec. 9. This we have construed as vesting district courts with equity jurisdiction which they may exercise without legislative enactment. *Matteson v. Creighton University*, 105 Neb. 219. Indeed, this court is committed to the view that, not only is equity jurisdiction conferred by the terms of the Constitution, but as thus conferred it is beyond the power of the legislature to limit or control. That, while the legislature may grant such other jurisdiction as it may deem proper, it cannot limit or take from such courts their broad and general jurisdiction which the Constitution has conferred upon them." *Burnham v. Bennison, ante,* p. 291.

It has been held that the proceeds of crime, when deposited in a bank by the criminal, may be recovered by the owner as deposits. *State v. Dunbar State Bank,* 120 Neb. 325. This is not, however, the exclusive remedy. Under equity jurisdiction, which is beyond the power of the legislature to limit or control, it has been determined in repeated decisions that the beneficiary of a trust may

refuse to ratify an unauthorized deposit, and that he may elect to follow and reclaim his converted trust property, even in changed forms, though mingled by the trustee with his own assets or estate. *State v. Bank of Commerce,* 61 Neb. 181; *City of Lincoln v. Morrison,* 64 Neb. 822; *Tarnow v. Carmichael,* 82 Neb. 1; *Logan v. Aabel,* 90 Neb. 754; *Central Nat. Bank v. First Nat. Bank,* 115 Neb. 472.

The statute, therefore, does not make unlawfully converted trust property which has been traced into general assets of an insolvent bank as trustee available to general depositors for the payment of their deposits. Such funds augment the mass of assets in the bank, but are not assets of the bank in the hands of the receiver within the meaning of the statute, since they are assets belonging to the beneficial owner, and not to the bank.

The decree preferring the claim of intervener over claims of general depositors is also assailed on the ground that he did not trace the converted proceeds of the renewal note into any specific property or asset in the hands of the receiver. The rule invoked by the receiver was stated as follows:

"A *cestui que trust,* who seeks a preference out of the estate of an insolvent national bank in the hands of a receiver, must clearly prove that the trust property, or its proceeds, went into a specific fund or property which came into his hands." *Central Nat. Bank v. First Nat. Bank,* 117 Neb. 161. See, also, *Central Nat. Bank v. First Nat. Bank,* 115 Neb. 444.

On the contrary, intervener relies on the rule stated in the dissenting opinion in *Central Nat. Bank v. First Nat. Bank,* 115 Neb. 451, which was subsequently adopted by the majority in *Central Nat. Bank v. First Nat. Bank,* 115 Neb. 472. That majority opinion stated the fundamental rule of equity as follows:

"Where the form of trust property is changed by a fiduciary and the resulting proceeds are wrongfully mingled by him with the mass of assets comprising his insolvent

estate, the beneficiary of the trust, in a proper case, may resort to the mass for redress, if augmented by the trust property." *Central Nat. Bank v. First Nat. Bank*, 115 Neb. 472.

This latter rule of equity, owing to a subsequent change in the personnel of the supreme court, was rejected in an opinion by a majority of one as being at variance with the interpretation of United States courts in administering federal laws applicable to national banks—laws then under consideration. In receding from the rule of equity last quoted, when applicable to a national bank only, the judge who declined to follow it said in his opinion:

"The writer has been very reluctantly driven to the foregoing conclusions as to national banks, but withholds commitment as to trust funds not imperatively ruled by federal law." *Central Nat. Bank v. First Nat. Bank*, 117 Neb. 161.

As applied to state banks under the Constitution and laws of Nebraska, the majority opinion reported in *Central Nat. Bank v. First Nat. Bank*, 115 Neb. 472, has never been overruled. The present record presents this question: Which of the divergent rules shall be applied in administering trust funds unlawfully mingled by a state bank as trustee with the mass of its general assets? Shall the rule formulated under equity power conferred by the Constitution of Nebraska and state legislation relating to state banks be abandoned for the so-called "federal rule" applied by some of the federal courts in winding up the affairs of insolvent national banks under the acts of congress? The affairs of our insolvent state banks should be wound up and the assets distributed under the laws of Nebraska in the light of equity power conferred by the state Constitution upon state courts.

In the suit now under consideration, the bank, as trustee, converted $4,500 belonging to intervener, unlawfully mingled the trust funds belonging to him with the assets of the bank, illegally used the funds in the regular

course of the banking business, became insolvent, and went into the hands of a receiver without executing the trust or refunding the money. Intervener traced his trust funds into the general assets of the bank. They augmented the mass of assets in the bank to the extent of $4,500, but that amount of the mingled funds was an asset belonging to intervener, and not an asset of the bank. Conceding that the identical trust funds were paid out in the regular course of the banking business, they paid obligations or debts of the bank to the extent of $4,500, and thus reduced its general indebtedness. Except for the unlawful use of the trust funds, the outstanding obligations of the bank, when the receiver took charge, would have been greater by $4,500. The general depositors have no valid claim on the trust funds, whether they remained in the bank or reduced bank debts by unlawful payment. In equity the effect is the same. General depositors are not entitled to the fruits of the bank's betrayal of trust. Intervener is not in the same class with them. Their deposits gave the bank lawful control of their deposited money in the regular course of the banking business. The proceeds of intervener's renewal note could only have been lawfully used by the bank in paying the original note. Under the circumstances, equity charges the mass of assets with the trust funds. The doctrine requiring the beneficiary of a trust to trace his trust funds into some specific asset or property in the estate of the trustee or in the hands of his receiver as a condition of reclaiming them did not originate in any moral philosophy or in any sound principle of equity jurisprudence. The defense of that doctrine lacks cogent reasons and involves a resort to opinions reiterating initial fallacies. The following excerpt from *Windstanley v. Second Nat. Bank,* 13 Ind. App. 544, was unanimously adopted in an opinion by Judge Letton:

"The true owner of property has the right to have his property restored to him, not as a debt due and owing, but because it is his property wrongfully withheld. As

between the *cestuis que trustent* and the trustee and all persons claiming under the trustee, except purchasers for value and without notice, all the property belonging to the trust, however much it may have been changed in its form or its nature or character, and all the fruits of such property, whether in its original or altered state, continues to be subject to and affected by the trust. * *. * It was formerly held that these rules came to an end the moment the means of ascertaining the identity of the trust property failed. * * * In the case of trust moneys commingled by the trustee with his own moneys, it was held that money has no earmarks, and when so commingled the whole became an indistinguishable mass and the means of ascertainment failed. But equity, adapting itself to the exigencies of such conditions, finally determined that the whole mass of money with which the trust funds were commingled should be treated as a trust." *Logan v. Aabel,* 90 Neb. 754.

The opinion adopting the foregoing language has never been overruled and is in harmony with views expressed by a former chief justice of the supreme court of the United States, who said:

"Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it; the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable, without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor." *Peters v. Bain,* 133 U. S. 670, 693.

The money in the hands of the receiver for distribution in the present instance is now greater to the extent of $4,500 on account of the conversion and the other unlawful acts of the bank as trustee. In equity the depositors do not have a valid claim for the amount of these trust funds. Equitably they belong to intervener and the district court wisely ordered the receiver to pay them in full. This procedure is adopted in administering the Nebraska laws applicable to state banks, rather than the federal laws applicable to national banks as interpreted in *Central Nat. Bank v. First Nat. Bank,* 117 Neb. 161.

AFFIRMED.

PAINE, J., concurs in the result.

GOOD AND EBERLY, JJ., dissenting.

For the reasons hereinafter stated, we respectfully dissent from the opinion adopted by a majority of the court.

As announced in the majority opinion, a court of equity will impress a lien for trust funds on all the assets of an insolvent trustee, if it be shown that the trust fund came into the possession of the trustee before he was declared insolvent, and without regard to whether the trust fund remains in or is a part of the assets of the insolvent estate. The rule announced is at variance with that long established by the decisions of this court. The former rule should not now be abrogated or modified unless it is unsound and does not respond to the dictates of conscience and reason. Let us review some of our former decisions and see how they have been applied to a situation similar to that in the instant case.

In *State v. Bank of Commerce,* 54 Neb. 725, it was held: "When trust funds are wrongfully converted and not only do not remain in the hands of, and are not found among the assets of, the wrongdoer, but are actually traced out of his hands and shown to have been dissipated, then the beneficiary of the trust fund is not entitled to have his claim allowed as a preferred one against the estate of the insolvent wrongdoer.

"If the trust property consisted of money, the claim of the beneficiary of the trust fund may be preferred to the extent of the *cash found among the assets of the insolvent trustee at the time of his failure,* unless it affirmatively appears that such cash assets are not part of the trust fund." (Italics ours.)

In that case a county treasurer had deposited trust funds in a bank which afterwards failed. The court held that the county was entitled to have its claim decreed a first lien upon any asset of the insolvent bank which it showed was the product of the beneficiary's moneys. The trust fund was in excess of $15,000. When the bank failed there was but $140 in cash on hand. The trust fund had been used in paying off other depositors of the bank. It was not shown that any part of the trust fund was represented by or invested in any particular asset of the bank other than the cash, which came into the possession of its receiver. The county was held entitled to a lien only to the extent of $140, as being a part of the trust fund, but was not entitled to have a lien against the mass of the bank's assets in the hands of the receiver.

In *Morrison v. Lincoln Savings Bank & Safe Deposit Co.,* 57 Neb. 225, it was held: "The owner of trust property is not, merely by reason of the character of his claim, entitled to a preference over the general creditors of an insolvent trustee.

"A person asserting a claim for preference against an insolvent estate has the burden of showing that such estate has been increased, to some extent, by the misappropriation of trust funds or property belonging to the claimant."

In that case the bank, prior to insolvency, received and misappropriated trust funds. It was sought to establish a lien against the general assets of the bank and in favor of the *cestui que trust.* In the opinion (p. 227) it was said: "The doctrine held in some jurisdictions, that the beneficiary of a trust fund is entitled in a case of this kind to a preference over the general creditors of an in-

solvent without showing that such fund, or part of it, was included in the assets which came into the hands of the receiver, was expressly repudiated by this court in the case of the *State v. Bank of Commerce, supra."* Again, in the opinion, in speaking of the right to an equitable lien, it was said that it rests "upon the equitable title of the beneficiary, who, seeking to recover specific property or to fix a charge upon a mass, must trace his estate, and show that the specific thing claimed is in equity his property, or that his estate has gone into and *remains in the mass he seeks to charge."* (Italics ours.)

Again, in *City of Lincoln v. Morrison,* 64 Neb. 822, in an opinion by Pound, C. (now recognized as one of the foremost jurists of the country) the authorities were reviewed, and it was therein held: "Misappropriation of a trust fund does not entitle *cestui que trust,* merely as such, and for that reason alone, to a preference over general creditors of an insolvent trustee."

The rule thus announced by this court has been in force for more than 30 years. Is it inherently unsound? Does it fail to respond to the dictates of conscience and reason? We do not think so. The rule, as announced in the majority opinion, seems to have been first announced in the case of *McLeod v. Evans,* 66 Wis. 401, decided in 1886. Later, the supreme court of Wisconsin specifically overruled this case in *Nonotuck Silk Co. v. Flanders,* 87 Wis. 237. In the latter case the authorities were reviewed quite extensively. In the opinion (p. 241) it was pointed out: "The guiding principle is that a trustee cannot assert a title of his own to trust property. If he destroys a trust fund by dissipating it altogether, there remains nothing to be the subject of the trust. But so long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust."

In the case of *Little v. Chadwick,* 151 Mass. 109, it was said (p. 110): "When trust money becomes so mixed up with the trustee's individual funds that it is impossible

to trace and identify it as entering into some specific property, the trust ceases. The court will go as far as it can in thus tracing and following trust money; but when, as a matter of fact, it cannot be traced, the equitable right of the *cestui que trust* to follow it fails."

By far the greater number of courts passing upon this question adhere to this view. The underlying reason for impressing a lien on specific property for the beneficiary of a trust is because his trust fund is invested in or forms a part of the specific property.

Suppose that an elevator company has several kinds of grain in its elevator belonging to it, among them a quantity of No. 1 wheat, and that it receives for storage from one of its customers a quantity of No. 1 wheat and commingles it in the same bin with its own wheat, and thereafter becomes insolvent. It is conceded that the owner of the stored wheat is entitled to a lien upon the mass of wheat which contains his own. If, prior to becoming insolvent, the elevator company has sold all of the wheat and placed the proceeds to its credit in a bank, it is clear that money, derived from the sale of the customer's wheat, is in the bank account in a specific fund, and he may have a lien upon that particular fund for reimbursement. But suppose again that the elevator company had sold the wheat, received the proceeds and dissipated them, and had on hand its elevator building and other kinds of grain when it became insolvent. Can it be said that the trust property is invested in the elevator building or in such other grain? Certainly not. The elevator company owned the building prior to the reception of the wheat for storage. The stored wheat is not invested in the elevator building or in other grain. Under the rule announced in the majority opinion, the owner of the stored wheat would be entitled to impress a lien upon all of the assets of the insolvent elevator company, including its elevator building. Liens may be created by agreement of the parties, by statute, or by a court of equity to do justice between the parties. We do not deny

that in this case the claimant was entitled to a judgment against the bank, but he had no right to a lien upon the bank's building or the bank's assets, which the bank possessed prior to the time it received its customer's renewal note. To the writer it appears that the rule announced in the majority opinion is not based upon reason or logic and is contrary to the great mass of judicial pronouncement upon the subject.

We are unable to concur in the majority opinion for another reason. Section 8-1,102, Comp. St. 1929, *inter alia,* provides: "The claims of depositors, for deposits, not otherwise secured, and claims of holders of exchange, shall have priority *over all other claims,* except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due." (Italics ours.)

By this statute, the lien of a bank's depositors became fixed, subject to the exception for taxes, at least at the time a receiver was appointed. The majority opinion destroys the statutory lien of the depositors upon the assets of the bank. It nullifies the statute, which has heretofore been given full force and effect in more than 100 opinions of this court. The statute in question has been recognized as valid for many years. Only the legislature may properly repeal it; yet the majority opinion, if it stands, effectually modifies and repeals the statute in part. It is not a judicial function to repeal, amend or modify an existing valid statute. Certainly, the bank building, furniture, fixtures and all its bills receivable, which were possessed by the bank prior to the reception of claimant's renewal note, were assets of the bank, and, under the quoted statute, the depositors were entitled to a first lien thereon, subject to taxes. The majority opinion entirely destroys this statutory lien. The statute quoted gives a first lien for federal, state, county and municipal taxes. If the opinion of the majority is sound, then the claimant of a trust fund may have a

first lien thereon to the exclusion of first liens for taxes. Under the rule announced in the majority opinion, if there was a mortgage on the bank building, a *bona fide* indebtedness, existing long before the bank became insolvent and before any trust fund came into its hands, such lien would be displaced in favor of the trust fund. If carried to its logical conclusion and the bank had pledged a part of its bills receivable to another bank for funds, the lien of the collateral holder would be displaced and the claim of the *cestui que trust* be held supreme. Such is not and never has been, until now, the law in this jurisdiction.

In the majority opinion it is, in effect, said that the trust fund is no part of the assets of the bank. This we concede. If the claimant's renewal note had been in the receiver's possession at the time this action was brought, it would be no part of the assets of the bank. If the proceeds of that note could be traced into any specific property in the hands of the receiver, that particular property would not be an asset of the bank; but, as above pointed out, the bank's building, furniture, fixtures and previously-owned bills receivable are assets of the bank, and the trust fund is not invested in them. The claimant was not entitled to a lien upon such assets.

The majority opinion quotes from and apparently relies, as a precedent, on the opinion in *Central Nat. Bank v. First Nat. Bank,* 115 Neb. 472. The opinion in that case never became the law of that case, much less a precedent for this court to follow. That opinion affirmed the judgment of the district court. Afterwards, a rehearing was granted, and another opinion, reported in 117 Neb. 161, was adopted, which reversed the judgment of the district court. That became the ultimate and final opinion of this court in that cause. It superseded and annulled the decision as a precedent, reported in 115 Neb. 472.

To the writer it appears that the rule announced and as applied in the majority opinion is illogical and inherently unsound. For these reasons, we dissent.