STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. CITIZENS STATE BANK OF WAHOO, E. H. LUIKART, RECEIVER, APPELLANT: OLOF PEARSON, ADMINISTRATOR, INTERVENER, APPELLEE.

FILED APRIL 20, 1934. No. 28811.

F. C. Radke, Barlow Nye, J. J. Thomas, Joe F. Berggren and G. E. Price, for appellant.

Hendricks & Kokjer and Good, Good & Kirkpatrick, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

EBERLY, J.

This is a proceeding in intervention in the receivership of the Citizens State Bank of Wahoo, Nebraska. The intervener is Olof Pearson, the duly appointed administrator de bonis non of the estate of John Hultstedt, deceased, who herein seeks to establish a claim in the nature of a trust fund against the assets of this bank in the hands of E. H. Luikart, receiver, in the sum of $11,650. This claim was allowed by the trial court as a trust fund to the extent of $7,050, and disallowed as to the balance. From this final order the receiver prosecutes this appeal, and the intervener by way of cross-appeal complains of the partial disallowance of his claim as a trust fund.

Sifting the facts from the record, so far as may be material to the controlling questions now before this court, we are limited to the following: It appears that during the course of events hereinafter narrated one Emil Benson occupied the position of cashier or vice-president of the Citizens State Bank of Wahoo, was one of the executives thereof, and its actual managing officer. While occupying this position, on July 2, 1923, he was, by the county court of Saunders county, appointed guardian of the estate of John Hultstedt, an incompetent. He qualified as such, and in that capacity took over and received possession of a homestead in the city of Wahoo, valued at $3,000; "cash on hand" amounting to $7,740.49 in the Citizens State Bank of Wahoo; certificates of deposit issued by this institution in favor of John Hultstedt in the

sum of $6,398.21; and a note given by one Pete Pearson and wife to such John Hultstedt in the sum of $13,000, which was secured by a first mortgage on real estate. Emil Benson served as such guardian until the death of his ward, which occurred July 1, 1927. On August 4, 1927, he was appointed and qualified as "administrator of the estate of John Hultstedt, deceased." Meanwhile the mortgage and note of $13,000 by their terms matured on February 29, 1924, and were in effect renewed by Pete Pearson and his wife executing and delivering three separate notes secured by three mortgages, which severally covered different portions of the identical real estate which had formerly been covered by the one mortgage of $13,000. These notes were for the sums of $3,000, $5,000 and $5,000 respectively. The payee named in each of these renewal notes and the grantee named in each of the renewal mortgages securing the same was the Citizens State Bank. The bank, however, contributed no cash at the time of this transaction. On the execution of these renewals the original $13,000 mortgage was released by Emil Benson, "as guardian of John Hultstedt." It appears that later, without direction or approval of the county court of Saunders county, the $3,000 note and mortgage were sold by the Citizens State Bank to George Beadle, and a cashier's check in that amount was issued to Emil Benson as guardian of John Hultstedt. On August 21, 1924, the Citizens State Bank entered on its books as assets owned by it the two notes of $5,000 each and the mortgages securing the same, and on that date credited to the guardianship account of Emil Benson the sum of $13,000. The bank subsequently sold the two $5,000 mortgages for their full value, and received their full value. We infer that this transaction was intentionally concealed from the county court, because Emil Benson in his subsequent reports, as well as his final report, as guardian, continued to list these mortgages as assets of the estate in his possession, and also inventoried them as property on hand after his appointment and qualification as administrator of the

estate in 1928. It also may be inferred that the bank paid interest on the $13,000 for a period of four years, in the sum of $2,600. It also appears that in March, 1924, one Bruce was indebted to the Citizens State Bank in the sum of approximately $16,000. Bruce was then the owner of 110 acres of encumbered land situated in Lancaster county, Nebraska, and all the notes representing Bruce's indebtedness were then about one year overdue. A settlement of this was made by and between Bruce and the bank on the following terms: Bruce and wife by warranty deed, dated March 4, 1924, in consideration of one dollar and settlement and adjustment of notes, conveyed to the Citizens State Bank of Wahoo 60 acres of his 110-acre farm. This warranty deed was recorded on September 5, 1924, and contained the warranty that the premises conveyed "are free from encumbrance." Bruce also executed and delivered to the Citizens State Bank a note of $9,000 secured by a first mortgage on the 50-acre farm retained by him. At the time of this transaction and just prior to its completion there was a first mortgage on the entire 110-acre farm of $15,200, on which past-due interest in the sum of $425 had accrued, making a total of $15,625. $7,000 of the $9,000 note represented Bruce's share of the amount of this first mortgage on the 110-acre farm properly allocated to the 50 acres, the title to which he retained. Interest amounting to $425 had accrued on his notes payable to the bank; $389 defrayed miscellaneous expenses occasioned by the transaction; and he was credited on the books of the Citizens State Bank with the balance of $1,192.20, which he subsequently "checked out." This transaction occurred on March 4, 1924, and on this day or the day following the Citizens State Bank of Wahoo actually issued its draft of $15,625, drawn on its correspondent bank in Omaha, in payment of the balance then due on the mortgage on the 110-acre farm. This mortgage note, thus paid, by its terms was payable at the Lincoln Safe Deposit Company of Lincoln, Nebraska, and was paid to the City National

Bank of Lincoln, Nebraska. That the entire transaction had been previously arranged and planned by the officers of the Citizens State Bank of Wahoo may be inferred from the fact that the release of mortgage which was received by this institution thus making this payment is both dated and acknowledged by the mortgagees on March 1, 1924. It also appears from a carbon copy of a letter introduced in evidence bearing date of March 3, 1924. It further appears that while this exchange thus issued by the Citizens State Bank was actually issued on the 4th or 5th of March, 1924, and paid by the drawee thereof on the 8th of March of that year, the entry of this draft on the draft register of the Citizens State Bank now appears under date of March 7, 1924, but it was not otherwise credited to its correspondent on its own books until August 21, 1924. The surrounding circumstances lend color to the view that the controlling motive involved in this transaction on the part of the officers of this bank was a desire to conceal the true condition of their institution. It will be noted that, notwithstanding the Citizens State Bank failed to record the facts in its records, the transaction with Bruce was a closed transaction not later than March 8, 1924. The rights of all parties to it were on that date fixed, and neither the John Hultstedt estate nor the guardian thereof had up to that time any connection with the same.

However, the Citizens State Bank of Wahoo was in a precarious condition. Its books were not in balance, and it is quite apparent that for reasons of their own its officers desired to avoid disclosing the fact of its ownership of the 60-acre farm as an addition to "other real estate," then carried on the books of this bank. It is obvious that the situation of this bank was one of danger and could not be continued indefinitely. The facts in the record sustain the conclusion that Benson, with the evident intent of aiding his bank, on August 21, 1924, without previous authorization of the county court of Saunders county, caused the sum of $15,625 to be charged out of

his account as guardian and a credit of that amount to be made on the books of his bank in the account of the First National Bank of Omaha, which was its correspondent bank. At the termination of the last transaction, it will be noted the bank owned the 60-acre farm; was receiving the rentals thereof; and that $15,625 had disappeared from its ostensible deposits and it had secured credit for that identical amount on its own books in the account of its correspondent bank. This continued almost four years, and then John Hultstedt, the incompetent, died. His death brought home to these delinquents that a settlement day was at hand, and at least a certain amount of the guardianship funds, which had been swallowed up by the bank, would have to be paid over. We are justified in the opinion that these bankers concluded it was highly desirable that money should be borrowed on the 60-acre farm, rather than to increase their bills payable or their rediscounts, if indeed in their then situation either of the latter methods was practicable. We deem it fairly established by the facts of the record that, for the purpose of securing money by negotiating a loan thereon for the benefit of the bank, the Citizens State Bank of Wahoo, by warranty deed on October 23, 1928, conveyed the 60-acre farm, hereinbefore referred to, to Emil Benson, its cashier and then managing officer. A real estate loan of $6,000 was secured on this land by Benson for the bank (*Lincoln Joint Stock Land Bank v. Bexten*, 125 Neb. 310). The proceeds thereof, less $25, the necessary expenses, were thereafter received by Benson who had been duly appointed administrator of his deceased ward, and in that capacity he lawfully made the expenditures that the changed circumstances due to the death of John Hultstedt required. Still later on April 23, 1930, Emil Benson, by deed of general warranty which was not signed or acknowledged by his wife, conveyed the 60-acre farm in question to "Olof Pearson as Trustee for the John Hultstedt heirs." Certain legal proceedings followed relating to the foreclosure of the $6,000 mortgage negotiated by

Emil Benson, wherein Olof Pearson appeared exclusively in his capacity as such trustee, and the result was the foreclosure sale of the mortgaged property for an amount which was sufficient only to satisfy the foreclosure decree, and from which no moneys were derived by either Pearson as trustee, or by those he assumed to represent in that capacity. His appointment to this trusteeship was without any lawful authority, judicial or otherwise, and his acts were those of a mere volunteer prompted by good motives.

In view of the controlling facts set forth, we are of the opinion that results attained by the decree of the trial court appealed from are in all respects supported by, and consistent with, the views of the majority of this court, as expressed by them in *State v. Farmers State Bank*, 121 Neb. 532, viz.:

"Where a state bank as trustee unlawfully converts and sells the trust property, deposits the proceeds to its own credit without authority, mingles indistinguishably the trust proceeds with the general mass of bank assets which are thus augmented, uses the trust fund in the regular course of the banking business, fails to execute the trust or to return the trust fund to the beneficial owner, and goes into the hands of a receiver, the beneficiary of the trust may resort to equity, charge the mass, and restore the trust fund as a preferred claim payable in full from the general assets, if sufficient."

See, also, *State v. Farmers State Bank*, 121 Neb. 547; *State v. Farmers State Bank*, 121 Neb. 580; *State v. State Bank of Touhy*, 122 Neb. 582; *State v. Citizens State Bank*, 124 Neb. 562; *State v. Farmers & Merchants State Bank*, 125 Neb. 437.

Though not discussed in this opinion, the cases cited by appellant, at variance with the rule above quoted, have been given due consideration. The views of the minority of this court in this connection are set forth in the dissenting opinions appearing in *State v. Farmers State*

*Bank,* 121 Neb. 532, 541, and in *State v. Farmers State Bank,* 121 Neb. 547.

It is certain that Emil Benson as and while the qualified and acting guardian of Hultstedt, an incompetent, and at the same time being the cashier and the managing officer of the Citizens State Bank, without authorization by any court of competent jurisdiction previously obtained, by his positive fraud designedly and unlawfully so conducted the affairs of his ward's estate that his bank by a series of unlawful steps secured, obtained, and took over, first the renewals of a $13,000 real estate loan, originally the property of John Hultstedt; then later by the joint acts of this bank and this guardian there was credited in his checking account the sum of $13,000 as a deposit made as and when the renewals of this mortgage were sold by this bank; and still later, on August 21, 1924, wholly without consideration and solely for the benefit of the bank, the sum of $15,625 was charged out of this account by Emil Benson as guardian, and by Emil Benson as managing officer of the bank, and a like sum entered in its books as a credit to the First National Bank of Omaha, its correspondent bank. Of each of these fraudulent steps the Citizens State Bank of Wahoo had actual notice. In addition, it aided and abetted in the fraud as committed.

"Where one person obtains property of another by theft or fraud, equity will raise a constructive trust in favor of the defrauded party, and he may follow the property into the hands of third persons taking it with knowledge." *Logan v. Aabel,* 90 Neb. 754.

The frauds committed involved no passing of money or physical assets out of the institution, but the property of the estate was in effect swallowed up by the institution, increased and swelled its assets, and save and except the sums returned as heretofore set forth it still retains the same, though, it may be said, not identified with or traced to any particular asset now in the receiver's hands.

It is obvious that the receiver is entitled to a credit on this claim for the following: First, for the sum of $5,975, being the net proceeds of the real estate loan; and, second, the sum of $2,600, being interest payments actually made by the bank. This leaves a balance due on this claim of $7,050, with interest, as determined by the trial court.

We have not overlooked appellant's contention as to the claimed estoppel based on the conveyance of the 60-acre farm to Olof Pearson "as trustee," and the proceedings taken by him in that capacity in connection with the foreclosure of the mortgage thereon. It appears that the action taken by Pearson, so far as related to this land, was that of a volunteer, and wholly without authority from those whom he purported to represent. Indeed, one of them was admittedly an incompetent.

The rule appears to be that no unauthorized individual transaction of an administrator *de bonis non* can estop his recovery in his official capacity. *Arlington State Bank v. Paulsen,* 59 Neb. 94; *Edney v. Baum,* 70 Neb. 159; *Coe v. Nebraska Building & Investment Co.,* 110 Neb. 322; 32 C. J. 744; 23 C. J. 1178.

We have carefully considered the other questions presented by the appellant, as well as those set forth in appellee's cross-appeal, but find the decision of the trial court in all respects substantially correct.

As required by the terms of the rule declared by the majority of this court in the controlling decisions cited, the judgment of the district court is, in all respects,

AFFIRMED.