John B. Colegrove and Company State Bank v. Amelia Gaupp.
Amelia Gaupp, Appellee, v. John B. Colegrove and Company State Bank, Robert G. Earley, Receiver of John B. Colegrove and Company State Bank (Appellant), and Christine Miller.

Gen. No. 8,713.

Opinion filed April 11, 1933. Rehearing denied June 20, 1933.

Oscar J. Putting, for appellant.

Leslie J. Taylor, for appellee; Graham & Graham, of counsel.

Mr. Justice Shurtleff delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Christian county.

The John B. Colegrove and Company State Bank was organized in 1920. Prior to that time it was conducted under the name of the John B. Colegrove and Co. Bank, a partnership. Martin B. Miller was a customer of the old bank, and did business with it until his death. He also had dealings of various kinds with

John B. Colegrove personally. Mr. Miller died in 1924, leaving Amelia Gaupp as one of his surviving children.

It is contended by appellee Amelia Gaupp that at the time in question the John B. Colegrove and Company State Bank received and accepted from Martin B. Miller and Christine Miller, his wife, the sum of $7,000 in trust for the benefit of Martin B. Miller, Christine Miller and Amelia Gaupp, and that the income therefrom should be reserved for them, or the survivor of them; that on February 2, 1928, Amelia Gaupp made a written demand on the bank for said $7,000 and the interest thereon, claiming she was the owner of the entire fund by virtue of a certain contract entered into between Martin B. Miller, Christine Miller and Amelia Gaupp on March 8, 1916, and as afterwards modified by agreement of the parties about March 1, 1920.

Appellant contends that the John B. Colegrove and Company State Bank never received the property in trust or in any other manner, but that the property or a part thereof was received by John B. Colegrove individually, when the old partnership bank of John B. Colegrove and Company was in operation, and before the John B. Colegrove and Company State Bank came into existence.

Shortly before the John B. Colegrove and Company State Bank closed, Amelia Gaupp, by her counsel, appeared at the bank and demanded the property of Amelia Gaupp, and information regarding the alleged trust fund. John B. Colegrove stated that there was some question concerning the trust, and from such discussion, counsel for Amelia Gaupp understood that there was some uncertainty in the mind of John B. Colegrove concerning the trust. Counsel for Mrs. Gaupp then suggested that if there was any question concerning the trust, a bill to construe the trust ought

to be filed in order that there could be a judicial determination concerning the proper construction of the trust. Mr. Colegrove assented to this suggestion, and subsequently a bill of complaint was filed in this cause, wherein the John B. Colegrove and Company State Bank was named as the complainant.

The bill alleged that the John B. Colegrove and Company State Bank was trustee. Soon after the original bill of complaint was filed, appellee waived the issuance and service of process and entered her unlimited appearance and filed her answer and cross-bill. About two or three days before the bank closed, a hearing was had and evidence was heard, but the hearing was not completed when the bank closed.

Appellant was appointed receiver, and, upon investigation by him, it appeared that at no time was there ever any of the trust funds in the possession of the bank, as alleged.

After becoming acquainted with the facts, appellant sought to have the original bill of complaint dismissed. But owing to the fact that a cross-bill was on file, the court refused appellant's motion and called the case for trial. Appellant then asked leave to amend the original bill and upon obtaining such leave set forth that the John B. Colegrove and Company State Bank had never at any time accepted any obligations or responsibility as a trustee in regard to the estate of Martin B. Miller, deceased, or any portion thereof; that it never authorized any of its agents, its president, cashier or anyone else, to make any declaration of trust or acknowledgment of any kind or character whatsoever, which could be construed as any assumption of responsibility or willingness to act as trustee for said estate; and that any acts of any kind or character which could be construed in any way as an indication that the John B. Colegrove and Company State Bank professed, assumed or intended to act as caretaker of

any property of the estate of Martin B. Miller, deceased, as manifested by any such officer or representative of John B. Colegrove and Company State Bank, was wholly unauthorized by said bank, and was done or committed for the purpose of defrauding said bank and unlawfully seeking to impose liability upon said bank.

The amended bill further charged that said John B. Colegrove was acting entirely in his individual capacity, and not at any time as an agent or representative of the John B. Colegrove and Company State Bank; that notwithstanding such fact and circumstances, the said John B. Colegrove, to the great wrong and detriment of the John B. Colegrove and Company State Bank, and for his own personal advantage, in order to protect himself against personal liability on account of his individual acts and doings in connection with said premises, did wrongfully and fraudulently cause this suit to be instituted by causing to be filed therein the original bill of complaint, falsely setting forth and misrepresenting to the court the facts and circumstances of the case, and pretending that the John B. Colegrove and Company State Bank was acting as trustee and accepting the responsibility therein, so as to commit and involve the John B. Colegrove and Company State Bank for full responsibility to the *cestui que trust* in place of the personal liability of John B. Colegrove as an individual.

Appellee demurred to the amended bill of complaint, but said demurrer was abandoned.

Allegations similar to those in the amended bill of complaint above mentioned also appear in the appellant's answer to appellee's cross-bill.

Appellee filed an answer to said bill of complaint and a cross-bill alleging in substance that the John B. Colegrove and Company State Bank was organized under the banking laws of the State of Illinois, and was qualified to act as trustee and in fiduciary capacities;

that on or about November 7, 1923, Martin B. Miller executed his last will and testament; that he thereafter died and his will was admitted to probate on January 15, 1924; that Cleveland P. Miller qualified as executor, administered the estate and was discharged about February 3, 1928; that it was provided in said last will and testament the following:

"Second: I give and bequeath to Amelia Gaupp the sum of Seven Thousand ($7,000) Dollars, and being one half of the money out of the proceeds of the sale of seventy acres of land which said fund is now held in trust for her by the John B. Colegrove and Co. State Bank of Taylorville, Illinois, which with Three Thousand Dollars ($3,000) already paid to her and Four Thousand Dollars ($4,000.00) more which was paid to her on March 1, 1920, shall be in total of Fourteen Thousand Dollars ($14,000.00) and shall be in full of her share of my estate, but the income of same to the amount of Two Hundred Fifty Dollars ($250.00) per annum is reserved for my use during my life time and after my death for the use of my-wife, Christine Miller during her life time."

The cross-bill then recites that on the date of the execution of said will, Martin B. Miller deposited with the bank the sum of $7,000 and the bank executed a declaration of trust in the words and figures following:

"Taylorville, Ill., November 7, 1923. Received of Martin B. Miller and Christine Miller, his wife, the sum of $7,000.00 which is placed in escrow and which is to be held in trust by me for the use of Martin B. Miller, Christine Miller and Mrs. Amelia Gaupp, and on the death of Martin B. Miller and Christine Miller or the survivor of them said sum to be delivered over to Mrs. Amelia Gaupp (wife of John Gaupp) of Springfield, Illinois. And while said sum is held in trust it is agreed that the taxes and assessments that may be levied against the same shall be paid by Mrs. Amelia Gaupp, and it is also agreed that the use of

said money and the income derived therefrom is reserved by Martin B. Miller and Christine Miller or the survivor of them. And it is also agreed that in case Mrs. Amelia Gaupp should die before the said Martin B. Miller and Christine Miller or the survivor of them, then the whole amount of same shall revert to the said Martin B. Miller to dispose of as he may see fit. And also it is agreed that in case the said Martin B. Miller or his wife Christine Miller should find it necessary to use any part of the principal of said amount at any time, that he or she may draw any part or all of same for their use. Interest to be paid at the rate of 5 per cent per annum.

"John B. Colegrove and Co. State Bank
"By John B. Colegrove, President."

The answer and cross-bill then recited that no part of the sum of $7,000 was received by Cleveland P. Miller but the bank paid to Christine Miller, surviving widow, $350 per annum interest on the fund of $7,000 beginning on November 7, 1924, and annually thereafter, including November, 1927, but had not paid the income from said fund to anyone subsequent thereto.

The answer and cross-bill further recited that on February 2, 1928, Amelia Gaupp made a written demand for the trust fund and interest, claiming to be the owner by virtue of a contract entered into between Martin B. Miller, Christine Miller, his wife, Amelia Gaupp and others, bearing date March 8, 1916, as afterwards modified by agreement of parties on or about March 1, 1920, also by virtue of the foregoing paragraph two of said will. The cross-bill then recited that the bank was desirous of discontinuing its service and duties as such trustee, and that it was ready and willing to pay over the sum of $7,000 and the interest accrued subsequent to November 7, 1927, to Amelia Gaupp if the court should decide that Amelia Gaupp is the owner, or to transfer the fund to some other per-

son to be designated by the order of the court as trustee.

The original bill made Amelia Gaupp a party defendant, prayed for an accounting and that the court should determine the question of the title to said sum of $7,000 and appoint a suitable person as trustee should the court determine that the funds should be held in trust.

Before the appointment of the receiver, appellee, Amelia Gaupp, had filed her written appearance to the original bill, which she had procured John B. Colegrove to present in the name and on behalf of the bank, and had filed an answer admitting the allegations with reference to the probate of the will and then proceeding the defendant denied that she had knowledge of the purported trust provision by the deposit of $7,000 with the John B. Colegrove and Company State Bank; that Cleveland P. Miller never obtained the money and disclaimed all interest in the sum of $7,000; alleged that on or about March 8, 1916, a contract was entered into by Martin B. Miller, Christine Miller, his wife, and children and prospective heirs of Martin B. Miller, which contract made a distribution to the several children; that pursuant to said contract, the appellee entered into possession of 70 acres of land described in the contract, paid all taxes and assessments, collected the rents and paid Martin B. Miller the sum of $225 per annum, as provided in the contract; that on or about March 1, 1920, she obtained a purchaser for the real estate for the sum of $14,000; that her father consented to the sale and made conveyance, and by the agreement between the heirs and the father, the annuity was increased from $225 to $250 per annum, which she continued to pay to her father during his lifetime, and thereafter to his widow, Christine Miller.

The answer further alleged that she received $7,000 of the purchase price; that her father requested her to permit him to retain the other $7,000 and to enjoy the income so long as he lived; that she consented to the arrangement, and was advised by her father that the $7,000 was invested at the John B. Colegrove and Company State Bank in her name, the income to be used by her father; that after the death of her father and the probate of the will, she relied upon Cleveland P. Miller to restore the said sum of $7,000, and about February 2, 1928, at the time fixed by the county court of Christian county for the final settlement of the estate of Martin B. Miller, she was advised by Cleveland P. Miller that he never received the sum of $7,000; that it was no part of the assets of the estate of Martin B. Miller, but that her money was held by the John B. Colegrove and Company State Bank for her; that she then made demand on the bank for the money and accumulated interest and was advised by the bank that it held the money as trustee until after the death of Christine Miller, the stepmother of Amelia Gaupp.

The answer further alleged that she had never known of the alleged trust until February 2, 1928, and denied that Martin B. Miller had any title to the $7,000 and denied that he could create a trust for the benefit of Christine Miller in said fund, as defendant had continued to pay the annuities to Christine Miller, as provided by the terms of the contract.

The answer denied that the court had jurisdiction to appoint any person as trustee; prayed that the same might be held as and for a cross-bill; prayed that the bank be directed to account with her, and that she be adjudged to be the owner of the sum of $7,000 with accrued interest, and entitled to immediate possession; and that she might receive such other and further relief in the premises as to the court might be deemed equitable.

Attached to the answer was the family contract entered into between Martin B. Miller and Christine Miller, his wife, and four children bearing date March 8, 1916, which recites the payment of certain moneys to Cleveland P. Miller and that in 1914, land was conveyed to a daughter, Rosa Bury, and a warranty deed to Amelia Gaupp to about 70 acres of land and a deed to another daughter for 70 acres, the three warranty deeds being placed in the bank of John B. Colegrove and Company State Bank with instructions to the bankers to deliver said deeds to each of the respective grantees immediately after the death of the survivor of Martin B. Miller and wife. The contract further provided for the payment of an annuity by each of the four children; that of Amelia Gaupp to be in the sum of $225, which, in 1920, was increased to $250. The contract then provided for forfeiture in case of default by the respective grantees.

A replication was filed and a hearing had on the foregoing pleadings on October 10, 1929, and the trial court determined that Christine Miller should be made a party. On November 13, 1929, Amelia Gaupp was granted leave and filed an amendment to her cross-bill, the amendment in substance being that Christine Miller claimed some interest in the fund of $7,000, made Christine Miller a party defendant and prayed for relief and for a summons to issue for Christine Miller to the November term of court. Summons was issued, served and returned, and at the November term of court, Christine Miller and the bank defaulted, there being no answers filed to the cross-bill. On February 14, 1931, an additional amendment was filed to the cross-bill setting up the failure of the John B. Colegrove and Company State Bank; that it was in liquidation, and that Robert G. Earley was appointed and is acting as receiver; that at the time of the closing of the bank on or about October 11, 1929, the bank had

on hand cash and cash items approximating $25,000 and that at all times after the creation of the trust had on hand in the form of cash and cash items an amount in excess of the trust fund of $7,000, and made Robert G. Earley, as receiver, a party defendant.

On July 13, 1931, Robert G. Earley, as receiver, filed an answer denying the allegations of the cross-bill and denying that the John B. Colegrove and Company State Bank held any funds as trustee. On the same date, by leave of court, Robert G. Earley amended the original bill of complaint filed by the bank by striking out substantially all of the original bill and setting up the failure of the bank and the appointment of Robert G. Earley as trustee, and then proceeded to allege that the bank had never accepted any obligations or responsibilities as a trustee and never authorized any agents, president or other officer to make any declaration of trust and in effect denied any responsibility or liability on the part of the bank as a trustee, as hereinbefore set out, and denied the right of the bank to have instituted the proceedings.

Amelia Gaupp demurred to said amended bill and filed exceptions to part and an answer to part. The case was set for trial without disposing of the demurrer and exceptions but was tried by an agreement of the respective parties and their solicitors, that portion of the decree being as follows:

"The court further finds that the cause was called for trial and technical objections to the pleadings were waived by the respective solicitors and their clients, and a hearing was had upon the cross-bill as amended, as aforesaid, and answer and replications, and the issues were submitted to the court as to whether or not the John B. Colegrove and Company State Bank became a trustee for Amelia Gaupp in the sum of Seven Thousand ($7,000.00) Dollars; also upon the question of whether or not Amelia Gaupp was the sole owner of

said trust funds, and also as to whether or not such trust funds constituted Amelia Gaupp a preferred creditor of said bank in process of liquidation under the receivership of Robert G. Earley. The technical questions of the sufficiency of the amendment to the original bill and answer of Robert G. Earley, receiver as aforesaid, being waived.''

The foregoing are substantially the issues in the cause, although not set out with the greatest nicety.

There was a decree in behalf of appellee, Amelia Gaupp, establishing the trust and giving it preference in the payment of claims and continuing the cause for the purpose only of determining the full amount of the preferred claims. The receiver has appealed.

Considerable feeling is expressed in this case, growing out of appellee and her counsel procuring the said John B. Colegrove in the beginning, to file the bill in the name of said bank, and by a solicitor selected by appellee and her counsel; however, appellant presents in his brief the following:

''We wish to state in behalf of appellant that we do not want to be understood as at any time questioning the good faith of Mr. Taylor, solicitor for appellee, in regard to the facts and circumstances under which the bill of complaint was prepared and filed. Our contention is that John B. Colegrove, in truth and in fact, was the trustee; that he used the money and trust property, converted the same to his own use, and subsequently he undertook to fraudulently shift his individual liability to that of the bank.''

The cause was first heard before the closing of the bank on October 10, 1929, when all matters were stipulated between counsel for appellee and counsel for the bank, but the cause was not completed. It was then stipulated, ''that John B. Colegrove and Company State Bank has the sum of Seven Thousand ($7,000.00) Dollars and has had it since the 7th day

of November, 1923, as evidenced by a copy of the Trust Agreement which is marked Exhibit B.'' The basis of proof in appellee's cause consists of the trust agreement signed by John B. Colegrove, in behalf of said bank, and the will of Martin B. Miller, deceased. Outside of those instruments there is no proof that any sum of money was paid into said bank in trust for appellee, or for any other person. Objections were made and sustained as to any showing of transactions between Colegrove and Martin B. Miller or between the bank and said Martin B. Miller, on the ground that Miller was dead, and any such transactions could not be gone into by parol proof. The same rulings were made in connection with proofs offered in regard to Cleveland P. Miller, the executor of the last will and testament of Martin B. Miller, deceased. Appellee, Amelia Gaupp, denied the trust and denied the right of her father, Martin B. Miller, in his lifetime to establish such a trust in her behalf. She claimed that the funds belonged to her and that she had merely left them in her father's hands during his lifetime. She had never heard of the trust until after her father's death. Each of the parties to this cause was suing and defending in her and its own right, and neither of them in a representative capacity and there were many errors of the court in its rulings upon the admission of evidence adverse to appellant.

May Royse Sharp, a witness for appellee, testified:

''I live in Taylorville. Until the John B. Colegrove and Co. State Bank closed, I was private secretary to the president of the bank, and stenographer for the bank for about twelve and a half years. During that time John B. Colegrove was president of the bank. . . . The Miller family was in the bank on many occasions, on banking business. I have made copies of this agreement and copies of the will several times. Cleveland Miller was there at times when I made copies of these papers. I couldn't say whether John B.

Colegrove was there. He has been present when they came in. I don't know whether John B. Colegrove had the trust money or trust property personally, or whether the bank had it. I remember making a copy of this agreement for Mr. Cleveland Miller at different times. John B. Colegrove was an attorney. He advised with the Miller family at different times about legal matters. I don't recall the date when Martin B. Miller died, but I remember the making of the will. Members of the Miller family came into the bank shortly after the death of Martin B. Miller. Cleveland Miller was in the bank many times. I can't say that he was with the family at the reading of the will. I remember the day the will was read to Mrs. Dollinschiek, after the death of Martin B. Miller. I don't know what attorney assisted in the probate of the will.''

Homer Brents was a witness in behalf of appellant. He testified:

''I live in Taylorville, Illinois. My business is abstract and titles. I was the first employee of the John B. Colegrove and Co. State Bank. The bank was opened on April 9, 1908. It was a partnership; was located on the west side of the square. I acted as cashier from the day it opened until the first of October, 1919. I came back about the first of November, 1919, and stayed until the spring of 1920. I had no designated title, but they called me the vice president as far as official signatures were concerned. I was re-employed in 1919, left later, and then went back in the fall of 1920. At that time I had a sort of general supervision of the abstract business and the placing of the stock of the John B. Colegrove & Co. State Bank. I knew something about a trust concerning the property of Martin B. Miller, by observation. . . . I knew by hearing conversations, and seeing transactions on the books of the bank, but I saw no written instrument of trust. The first time was at the time of the purchase of the land on which Ricks' Addition to

Humphrey is located, in 1912. The John B. Colegrove & Co. State Bank was not in existence at that time— not until 1920. . . . I worked with the Colegrove Bank to the 15th of April, 1925. I learned of the Miller trust fund only through conversations, observation and transactions that came through. Mr. and Mrs. Miller, Martin B. Miller and Christine Miller came to the bank and waited an hour or two on different occasions and had a private conversation with Mr. Colegrove. While they were in conference Mr. Ricks came over and stopped at the bank window and told me.

"Mr. Taylor: That is objected to.

"Witness: I had conversations with Mr. Ricks, and the clerks in the bank. I didn't learn anything about the Miller business from Mr. Colegrove.

"Q. Do you know whether Mr. Ricks borrowed any of this trust money?

"Mr. Taylor: That is objected to.

"Mr. Putting: We are trying to identify this fund, as to who borrowed it and as to who it was borrowed from.

"Mr. Taylor: We object to it.

"Mr. Putting: This witness cannot tell all he knows in one answer.

"Mr. Taylor: The evidence so far, is undisputed that the president of the John B. Colegrove & Co. State Bank executed this trust agreement and any conversation which would tend to refute the intent of the papers would—

"The Court: The objection is overruled, I will hear it subject to the objection."

Cross complainant excepted.

"Q. Do you know whether Mr. Ricks borrowed any of this trust money?

"Mr. Taylor: That is objected to.

"A. Yes, sir, $7,300.00. I know where that money came from. The note of the Ricks Motor Sales Co.,

payable to John B. Colegrove, trustee, was brought out of the room in which the conference between Mr. Colegrove and the Millers had taken place, and into which room Mr. Ricks had gone, was brought into the bank and put through the day's business, and I had previously been told.

"Mr. Taylor: I object to any conversation between the Bank's clerks and Bank's officers.

"Witness: This was not, this was with the borrower.

"Mr. Taylor: They don't claim the conversation to have been had in the presence of Mr. and Mrs. Miller.

"Mr. Putting: We are making the offer.

"The Court: The objection is overruled."

Cross complainant excepted.

"Witness: The Ricks Motor Sales Company owed $7,300 and on this occasion Mr. Ricks informed me he was going to take up his $7,300 note, that Mr. Colegrove had arranged for him to get it from the Millers, and in a few minutes after he went out the new note was brought in by Mr. Colegrove, payable to John B. Colegrove, trustee, and indorsed without recourse.

"I am not through with that conversation. The next day Mr. Ricks came in. . . . There was a conversation the next day about this matter with Ralph Ricks." Objected to; overruled; cross complainant excepted. "Nothing was done as a result of that conversation. I had access to the books and records of the bank. There was no record anywhere of any trust money or property being held by the John B. Colegrove and Co. State Bank for Martin B. Miller, or his estate, or Amelia Gaupp. I continued my connection with the bank until April 15, 1925.

"Q. During any of that time was there any record or any other evidence in writing, or otherwise, in the Bank there, where John B. Colegrove and Co. State Bank was holding any property in trust for Martin

B. Miller, or his heirs or Amelia Gaupp, or the Martin B. Miller estate?

"Witness: No, sir, there was not.

"Q. Do you know of John B. Colegrove, himself, having or handling any money or property in trust for Martin B. Miller, or his estate, or Amelia Gaupp or any of his heirs?

"Mr. Taylor: At what time?

"Mr. Putting: During the time that he was there at the bank, in 1924 and 1925.

"Witness: Not from any actual evidence. The books of the bank disclosed nothing more than that John B. Colegrove, trustee, was named as the payee in the $7,300 note. John B. Colegrove, personally, was named as trustee.

"Mr. Taylor: That is objected to, unless they show that instrument.

"Witness: I don't know where the instrument is—the note of the Ricks Motor Sales Co. There was nothing on the note to indicate for whom John B. Colegrove was acting as trustee. That account was kept in a separate file, and it was renewed at various times. I saw the renewals. The last renewal I had any personal knowledge of was the last one I entered in the bills receivable ledger in 1925. The last two or three renewals were made payable to John B. Colegrove, trustee. The bank was not named as payee in any of these notes as trustee. I have recently examined the books of the bank to refresh my memory. I found various credits and debits on the liability ledger as a direct liability against the Ricks Motor Sales Co., as a liability on the $7,300, and that was entered during the time I was an employee. I kept the liability ledger. The entries were made by me and were the same today when I examined them as when I made them."

Cross-examination.

"Mr. Martin Miller, when I knew him, was the owner of quite a large body of land. I don't recall of him

having a personal account in the John B. Colegrove and Co. State Bank, in the way of a checking account or certificate of deposit. I knew of him selling 40 acres of land. I have no recollection of a transaction by which Martin P. Miller, a brother of Mrs. Gaupp, purchased 40 acres for $40,000. I would say that Mr. Colegrove acted as the advisor of Mr. Miller. They didn't let anyone wait on them but Mr. Colegrove. The sum of money I have in mind is $7,300. That was the Ricks Motor Sales proposition. That note became an asset of the bank, but renewed each time to John B. Colegrove, trustee and endorsed. I don't believe I ever saw cross-complainant's exhibit 9 until since the bank closed. There might have been papers in the vault that I didn't see. I didn't see the papers that were sealed up. If this paper had been Mr. Miller's or Mr. Colegrove's I would not have seen it. I did not learn the details of a great many of Mr. Colegrove's transactions. I can't fix the date on which I had that conversation with Mr. Ricks when Martin B. Miller and Christine Miller were in conference with Mr. Colegrove. I cannot recall any other transactions with Martin B. Miller on the same date. There would not be anything on the books about cross-complainant's exhibit 8. I never saw a copy of that in the bank's vault. I don't know whether I was an employee at the time the will was made, as I don't know the date of it. I have no knowledge of a $7,000 fund. I have no knowledge whatever of the Gaupp trust agreement and the Martin B. Miller will. This note for $7,300 appears on the liability ledger as an existing note at the close of the bank, and that is the only evidence I have of it. That is the Ricks Motor Sales Co. note. The concern later went into bankruptcy. I don't believe the first or second renewal of the note carried the notation of trustee following the name of the payee, but from 1923 it appears with the name of the payee written in the liability ledger, with J. B. C.

as trustee, but the note was in existence before that. I had no official title in the bank. The other officers of the bank had occasion to examine these notes any time they went to the note case. I wasn't at any of the directors' meetings. Ralph Ricks was second vice-president of the bank part of the time. April 15, 1925, was the last date I was actively in the bank. I can't recall whether I ever saw Mrs. Gaupp in the bank in connection with this business.''

Leon Traylor testified for appellant:

''I am assistant cashier at First Trust and Savings Bank and assistant to the receiver of the John B. Colegrove and Co. State Bank. I was assistant cashier for the John B. Colegrove and Co. State Bank from the time of its organization in 1920, until October 10, 1929, the last day that the bank operated. I had access to the books, papers and records of the bank.

''Q. I will ask you whether, during any of that time, from 1920 up to the time the bank closed, the John B. Colegrove and Co. State Bank had any record where it was acting as trustee for Martin B. Miller, or any of his heirs, or for Amelia Gaupp?

''A. None that I know of. I do not know of any trust that was conducted or handled for Amelia Gaupp or the heirs of Martin B. Miller by anyone connected with the John B. Colegrove and Co. State Bank. I did not know of John B. Colegrove handling any such trust. I know of the Ricks Motor Sales Company owing money wherein John B. Colegrove, as trustee, was named as payee. That was a note of $7,300. I would say the date of it was somewhere around 1920. The note was renewed from time to time. No payments were made on it.''

John B. Colegrove was a witness in behalf of appellant and testified:

''I reside in Taylorville, and was president of the John B. Colegrove and Co. State Bank. Before the

John B. Colegrove and Co. State Bank was organized we run the partnership bank of John B. Colegrove and Co. I knew Martin B. Miller in his lifetime, and I know Amelia Gaupp and Cleveland Miller.

"Q. Directing your attention to about the 7th of November, 1923, did you act personally as trustee over a trust fund of over $7,000?

"Mr. Taylor: That is objected to as leading.

"Q. Did you act as trustee over any money or property for the use of Martin B. Miller, Christine Miller and Mrs. Amelia Gaupp?

"A. Yes, sir.

"I was trustee, or agent, or something, for Martin B. Miller. I had some money. $4,000 was the balance due on a forty acre tract that we bought from him, and that $4,000 was to go to Martin P. Miller. . . . It went on two or three years and he had a chance to sell some of the land to Martin P. Miller, his son, and he made the arrangements with Mrs. Gaupp and Mrs. Trost. I received $7,000 and $7,300 from Martin B. Miller, about ten to fifteen years ago—about 1919. I received the $7,300 mentioned in cross-complainant's exhibit 1. . . . The $7,000 which I received about December 7, 1923, came from the sale of about 80 acres of land. I received the money from Martin P. Miller in two payments, about six months apart. . . . Martin P. Miller made the check to his father, Martin B. Miller, and Martin B. Miller turned the check for $3,000 over to me as a personal loan. When they closed up the deal Martin B. Miller got $4,000 more and turned it over to me to hold in escrow for him and collect the interest for him as long as he lived. I gave him my personal note for the first $3,000 he turned over to me. When I received the $4,000 to be held in escrow I made him a trust certificate. . . . I got the $4,000 on the 1st of March after he sold the land, making $7,000, and then I made him a certificate of the

old bank for it. It run on for several years and then I made them a certificate with the new bank, about 1923, and it stands that way yet.

"Q. Well, now then, who got this money, you or the old bank or the new bank?

"A. Part of it was put in the bank in my name. $4,000 was never in the bank, it was always a note, and the $7,300, the bank never did have that. . . . That is the $7,000 that I got and put in the bank in my name, and then paid to the bank for money I owed the bank personally.

"Q. I will ask you whether or not the John B. Colegrove and Co. State Bank, itself, ever did anything with regard to this $7,000 other than what you have mentioned?

"Mr. Taylor: That is objected to for the same reason. I don't think that the officer of the bank can come in and repudiate the written undertaking of the bank.

"The Court: Overruled, I will hear it." Exception.

"A. The bank had nothing to do with it except what I did, either as an officer or an individual. I am a licensed lawyer, and gave some legal advice."

This is all of the proofs in the record tending in any manner to establish a trust. The funds, as a trust, never reached the bank. They were used by Colegrove to pay his indebtedness at the bank. The bank, as an entity, never had any knowledge of such a trust. The burden of proof in this case is upon appellee to establish a trust. Appellee never had any dealings with the bank in regard to these funds and denies the trust. Appellee's father, by the proofs, never made a special deposit in the bank, but did trust Colegrove. None of the funds in controversy were ever placed in the bank, in trust, and the only foundation of a claim of trust is the false and fictitious trust agreement, executed by Colegrove under date of November 7, 1923. It is not claimed that this agreement was ever executed or delivered to any person at the request or with the knowl-

edge of either the appellee or her father, Martin B. Miller. It did not constitute a trust, where no funds were placed in the bank in pursuance of the instrument. *People v. Farmers State Bank,* 338 Ill. 134.

It was held in *Sturges v. Keith,* 57 Ill. 454:

"The difficulty with the proposition is, that if a sole party should, as a banker, receive stock or coin upon special deposit, and it should be embezzled by his own clerk or cashier, then, although that would be a wrongful conversion of the property, still it would not be the act of the banker, nor would he be liable.for such conversion unless he participated in it, or was guilty of gross negligence. Story on Bailments, sec. 88. If a sole party would not be liable under the circumstances supposed by the instruction, then, of course, several would not." But even this authority does not apply in the case at bar, because none of the funds of appellee were ever paid into the bank so that they could be even embezzled.

It follows, that the decree of the circuit court of Christian county should be and is reversed.

*Reversed.*