(No. 22175.—

THE JOHN B. COLEGROVE & CO. STATE BANK *vs.* AMELIA GAUPP, Plaintiff in Error.—(ROBERT G. EARLEY, Receiver, Defendant in Error.)

*Opinion filed October 17, 1934.*

LESLIE J. TAYLOR, and GRAHAM & GRAHAM, for plaintiff in error.

OSCAR J. PUTTING, for defendant in error.

Mr. JUSTICE HERRICK delivered the opinion of the court:

The circuit court of Christian county entered a decree in a chancery proceeding had in that court allowing the sum of $7700 as a preferred claim in favor of Amelia Gaupp, the plaintiff in error, (hereinafter called the claimant,) and against Robert G. Earley, the defendant in error herein, as receiver of the John B. Colegrove & Co. State Bank, against the funds of that bank at the time it ceased doing business. The receiver prosecuted an appeal to the Appellate Court for the Third District, and that court reversed the decree without remanding the cause. The record comes here for review upon a writ of *certiorari* granted upon the application of Amelia Gaupp.

The pleadings are quite extensive and in their chronological order the substance thereof is fully stated in the opinion of the Appellate Court. (*Colegrove & Co. State Bank* v. *Gaupp*, 271 Ill. App. 51.) It was stipulated in the circuit court that all technical objections to the pleadings were waived, and it will not be necessary to state the pleadings here other than that the cross-bill of Amelia Gaupp contained a prayer for general relief.

The issues submitted to the trial court were stipulated to be: (1) Whether the John B. Colegrove & Co. State Bank became a trustee for Amelia Gaupp in the sum of $7000; (2) whether Amelia Gaupp was the sole owner of the trust fund; and (3) whether Amelia Gaupp is a preferred creditor to the amount of such fund against the bank in receivership.

The John B. Colegrove & Co. Bank was a partnership doing business as a private bank in Taylorville for several years prior to 1920. John B. Colegrove was its president. The John B. Colegrove & Co. State Bank (hereafter called the State bank) was incorporated under the banking laws of this State, opened for business on January 3, 1921, and continued in business until October 10, 1931. On the succeeding day it failed to open its doors. Later a receiver was appointed for such bank by the Auditor of Public Accounts. Colegrove was president of the latter bank during all the time it operated as a bank. Martin B. Miller was the father of the claimant. Christine Miller, wife of Martin B., is the step-mother of the claimant. On March 8, 1916, a family contract was made between Miller, his wife and four of his children. By the terms of the contract, so far as they relate to the claimant, she became the owner by deed from her father, in which deed her step-mother joined, of 70 acres of farm land in Christian county, with a covenant on Mrs. Gaupp's part to pay to her father and step-mother, and the survivor of them, an annuity of $225, which annuity in March, 1920, by mutual consent of the

parties was increased to $250. Mrs. Gaupp complied with all the provisions of the contract on her part to be performed. The 70-acre tract was sold in 1919 for $14,000. Apparently by the mutual agreement of Mrs. Gaupp and her father the proceeds of the sale of the farm were paid to him. He in turn paid $7000 to her and retained $7000. Out of the funds reserved by Miller he in 1919 loaned $3000 to John B. Colegrove, for which Colegrove gave his personal note payable to Miller. On March 1, 1920, Miller delivered $4000 to Colegrove. Colegrove testified, and he is not contradicted, that he was to hold the $7000 in "escrow" and to pay the interest to Miller during his lifetime; that on receipt of the $4000 Colegrove issued a certificate of the private bank to Miller, which represented the $3000 and $4000 loaned by Miller. The evidence further shows that the several sums of $3000 and $4000 were deposited to the personal account of Colegrove in such private bank and that he used the money to pay on an indebtedness he owed that bank.

On November 7, 1923, Miller made his will. Colegrove wrote the will. The second paragraph is as follows:

"*Second*—I give and bequeath to Amelia Gaupp the sum of seven thousand ($7000) dollars, and being one half of the money out of the proceeds of the sale of 70 acres of land which said fund is now held in trust for her by the said John B. Colegrove & Co. State Bank of Taylorville, Illinois, which with three thousand dollars ($3000) already paid to her and four thousand ($4000) more which was paid to her on March 1, 1920, shall be in total of fourteen thousand dollars ($14,000) shall be in full of her share of my estate, but the income of the same to the amount of two hundred fifty dollars ($250) per annum is reserved for my use during my lifetime and after my death for the use of my wife, Christine Miller, during her lifetime."

On the same day Colegrove wrote and delivered to Miller a declaration of trust, as follows:

"Taylorville, Ill., *November 7, 1923.*

"Received of Martin B. Miller and Christine Miller, his wife, the sum of $7000 which is placed in escrow and which is to be held in trust by me for the use of Martin B. Miller, Christine Miller and Mrs. Amelia Gaupp, and on the death of Martin B. Miller and Christine Miller or the survivor of them said sum to be delivered over to Mrs. Amelia Gaupp, (wife of John Gaupp) · of Springfield, Illinois. And while said sum is held in trust it is agreed that the taxes and assessments that may be levied against the same shall be paid by Mrs. Amelia Gaupp, and it is also agreed that the use of said money and the income derived therefrom is reserved by Martin B. Miller and Christine Miller or the survivor of them. And it is also agreed that in case Mrs. Amelia Gaupp should die before the said Martin B. Miller and Christine Miller or the survivor of them, then the whole amount of same shall revert to the said Martin B. Miller to dispose of as he may see fit. And also it is agreed that in case the said Martin B. Miller or his wife, Christine Miller, should find it necessary to use any part of the principal of said amount at any time, that he or she may draw any part or all of the same for their use. Interest to be paid at the rate of five per cent per annum.

John B. Colegrove & Co. State Bank,
By John B. Colegrove, *President.*"

This declaration of trust supplanted the certificate for $7000 issued by the private bank and represented the same money. This instrument was found in a box of the deceased after his death. The litigation by which it is sought to bind the State bank as a trustee of the funds involved centers about this declaration of trust. The claim is made for the principal sum of $7000 and two years' interest accrued thereon.

Martin B. Miller died January 15, 1924. His will was admitted to probate, his estate duly administered and the administration later closed on February 3, 1928. The $7000 trust fund mentioned in the declaration of trust never came into the possession of Miller's executor. Interest was paid on the $7000 to Christine Miller from September 7, 1924, until and including November 7, 1927, by the State bank. Thereafter no interest was paid. Colegrove had entire charge of these transactions. The evi-

dence conclusively established the fact that there was no entry or writing on the records of the State bank disclosing the existence of the trust. With the exception of Colegrove no officer had notice of the existence of the trust until in 1929. The State bank never at any time had the trust fund, or any part of it, in its possession or custody, nor was it ever in control of such fund, nor did it ever exercise or attempt to exercise any dominion over the fund.

In order for the claimant to recover as a creditor having a preference, a trust relationship must be established between the State bank and the claimant. To create a trust there must be a *res* in existence upon which the trust can act. The mere execution and delivery of a declaration of trust is not sufficient to create a trust, if, in fact, no *res* exists upon which the same may operate.

There is a broad and marked distinction between the liability of a bank as a trustee of a fund and its liability for compensation for a debt or obligation growing out of the fund. A bank may be guilty of such acts on the part of its executive officers by which it may be legally held to pay a debt represented by a trust fund, where, in fact, as to the bank no such trust exists. But the bank cannot be held liable as a trustee of the fund. By the payment of the interest by the State bank on the $7000 for a period of three years the receiver of the State bank is estopped from denying its legal liability for compensation for the amount of the trust fund, but he is not estopped from denying the bank's liability as trustee of the fund. (*People* v. *Farmers State Bank*, 338 Ill. 134.) The issuance by Colegrove, several years after the money had come into his possession, of the declaration of trust executed by him as president of and in the name of the State bank did not constitute the State bank trustee for such fund. The declaration of trust was a fictitious writing. It was not within the power of the president of the State bank by his dishonest and fraudulent acts to make that bank a trustee

for a fund which never reached the bank and was never paid over to any officer of the bank while acting for such bank.

The evidence in the case traces the funds to Colegrove before the State bank had any corporate existence as a legal entity, and there the trail ends. It is clear that the original arrangement between Colegrove and Miller for the $3000 was that of debtor and creditor. Just what the contents were of the certificate of the private bank issued for the $7000 at the time Colegrove received the $4000 is not clear from the evidence, but as we view the record it is immaterial what the terms of that certificate were. Nothing occurred after the issuance of such certificate by virtue of the dealings between Miller and Colegrove by which the State bank ever became trustee for the fund. There never was a special deposit of the fund with the State bank. *People* v. *Farmers State Bank, supra.*

The right to reclaim a trust fund is founded on the right of the ownership of the fund on the part of the party claiming the same to have it restored to him by the party having possession of the fund. Such claim is not based upon the relationship of debtor and creditor or tort feasor but is bottomed solely on ownership. Therefore, to recover as a *cestui que trust,* the owner or beneficiary of the trust propery must prove that the alleged trustee has, in fact, the property even though it be in an altered form. Failing in this the trust fails, and the claim, if there is any legal liability therefor, becomes merely one of compensation on the same plane as other general debts of the debtor. *People* v. *State Bank of Maywood,* 354 Ill. 519.

The plaintiff in error has failed to establish that the funds in question, or any part thereof, ever came into the hands of the defendant in error, and therefore she is not entitled to have her claim allowed as a preference over common or general creditors. The State bank by its act

in paying interest on the claim has recognized its liability for compensation to the claimant.

The judgment of the Appellate Court for the Third District and the decree of the circuit court of Christian county are reversed and the cause is remanded to the .circuit court with directions to enter a decree allowing the claim of the claimant as a common claim against the receiver, with proper provision for safeguarding Christine Miller as to the $700 interest accrued on the claim and her right during her lifetime to the income that may be earned on the amount of the principal of the $7000 recovered.

*Reversed and remanded, with directions.*