The People of the State of Illinois ex rel. Edward J. Barrett v. Ridgely-Farmers State Bank of Springfield.
In re Kate L. Herndon, Appellee, v. William L. O'Connell, Appellant.

Gen. No. 8,901.

Opinion filed July 17, 1935.

A. M. FITZGERALD, H. C. MOORE and W. P. ROBERTS, all of Springfield, for appellant.

GILLESPIE, BURKE & GILLESPIE, of Springfield, for appellee.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

In the suit of Edward J. Barrett, Auditor of Public Accounts, v. Ridgely-Farmers State Bank of Springfield, in the circuit court of Sangamon county for the liquidation of said bank, the appellee filed an intervening petition asking to be adjudged a preferred claimant in the sum of $5,162.52. The receiver in charge of the bank answered the petition denying that she was entitled to any judgment, whatever, against him.

The evidence showed that prior to 1928 William A. Foster in behalf of his parents Jacob F. Foster and Mary Louisa Foster, his wife, and in response to a newspaper advertisement stating that the Ridgely-Farmers State Bank had money to loan, went to the bank for the purpose of inquiring about same. He saw Edward Keys, the president of the institution, and made known his business and was referred by the president to Mr. Lowe, the assistant cashier. Mr. Keys told Foster that Lowe took care of such matters for the bank. A loan of $5,000 secured by a·mortgage upon real estate was negotiated and the note and mortgage papers signed by Foster and his parents, payable to Frank H. Lowe, at the Ridgely-Farmers State Bank, Springfield, Illinois. Foster's testimony further shows that the money was loaned directly to him and his parents by the bank. All the negotiations took place in the business quarters of the bank where Lowe, as assistant cashier, had a desk.

The appellee had long been a customer of the bank and maintained an account therein and at various times had consulted its president, vice president and Frank H. Lowe, assistant cashier, in making investments. She testified that from time to time, prior to January, 1928, she had dealt with Lowe as a representative and officer of the bank and always in the banking rooms during banking hours; that in January, 1928, she went to the bank to make a deposit and was approached by Lowe asking her if she wanted to make an investment in the Foster loan. She purchased this loan, upon his recommendation, and gave her check, payable to F. H. Lowe, for the amount of the loan, plus accrued interest. The check was indorsed "F. H. Lowe, Agent," and deposited in an account designated "Frank H. Lowe, Agent." The appellee further testified that this was all done in obedience to instructions from Lowe but that it was a bank transaction, and a loan which the institution disposed of to customers, when they were seeking to purchase investments. The appellee had purchased loans prior to this time from the bank which were carried on with Mr. Lowe in a similar manner. On February 1, 1929, the Fosters desired to pay off the loan and delivered to Lowe their check in full for the amount due, payable to him personally. This check was deposited in the Frank H. Lowe Agency account. The ledger sheet of "Frank H. Lowe, Agent" shows that he collected the principal amount of said note and mortgage, amounting to the sum of $5,000, together with interest due June 5, 1929, in the sum of $162.50; that a check drawn on June 6, 1929, was issued to appellee covering interest coupon No. 4 in the sum of $162.50; that on October 24, 1929, a further check for $162.50 was drawn on said account covering coupon No. 5 and a further check on November 10, 1930, in the sum of $162.50; that a ledger sheet of July 2, 1931, of the personal account of Frank H.

Lowe shows a check credited to the account of appellee in the sum of $164.35.

The Frank H. Lowe, Agent account was an account of the bank through which loans and other transactions of the bank were handled at and prior to the time that the Foster loan was made and at the time of the payment thereof. This was done for the convenience of the bank and during all the time the account ran in the bank under the designation of ''Frank H. Lowe, Agent,'' funds belonging to the bank were deposited therein and upon which deposit Lowe checked for purposes of the bank. Lowe testified that one of the reasons for maintaining this account in his name as agent was so that exchanges could be made without an order of the board of directors, but upon the request of the president and vice president; also that he was a widower and in making mortgages and loans, deeds would be simple of execution. When the bank closed Lowe was found to be a defaulter and indebted to the bank in a sum exceeding $60,000.

The cause was referred to the master in chancery, who took the proofs and reported to the court that the Fosters had paid the mortgage indebtedness to the bank and that such fund was held by the bank, in trust, for the appellee and the court entered a decree giving judgment for the appellee for a preferred claim in the sum of $5,000.

The appellant contends that the court erred in finding that the appellee was entitled to a preference: First, because there is no testimony showing that the funds, in payment of the Foster loan, were ever traced into the hands of the bank and even if it be admitted that such funds were traced into the bank that they were traced out again before the receiver took possession of the assets of said bank; second, that the money was paid to Frank H. Lowe, personally, and the bank never received the money. Appellant insists that there

is no showing, whatsoever, that any money was placed for appellee in the bank and no testimony anywhere in the record that the bank ever received any part of the check in payment of the mortgage which did in any manner augment its assets. It relies upon the principle stated in the case of *People ex rel. Nelson v. Peoples State Bank of Maywood,* 354 Ill. 519, as follows:

"The insufficiency of the assets to satisfy all the demands made upon the insolvent gives rise to claims for preferences and the necessity for their adjudication. The real controversy in a case of this character is therefore between the claimants who seek priority in the order of payment on the one hand and the great body of creditors, usually represented by the receiver, on the other. All debts, in the absence of priorities prescribed by statute, are of the same rank or level, and a person who seeks a preference over his fellow claimants in the distribution of an insolvent's assets must show that he occupies some relation to the insolvent's estate which differs from and raises him above the plane of a mere creditor. The law recognizes a claim for a preference actually based on a right of property in specific assets in the possession of an insolvent bank at the time it ceased to do business. In case of the misappropriation of such assets, a court of equity, when its jurisdiction is invoked by an appropriate action, will declare the wrongdoer a constructive trustee of the proceeds of his wrongful act. The constructive trust will attach to successive substitutions so long as they can be identified as the product, either as a whole or in part of the original assets, and the superior rights of a bona fide purchaser have not intervened. A trust, however, necessarily involves a relationship between the persons with respect to a certain property, and unless the claimant shows, in the case, for example, of an insolvent bank, that the receiver has possession of the whole or a part of the property or its proceeds, the claimant does not place himself in a relation to the insolvent's estate

which differs from that of an ordinary creditor and, as a consequence, no trust can be declared or enforced.''

Appellant insists that it is not sufficient to merely trace funds into a bank but that they must be traced also into the hands of the receiver; that the proof of a check being traced to a bank does not create any presumption that the assets going into the hands of its receiver are augmented; that the burden of proof is upon a claimant to make such proof by competent testimony and that they must not only trace a check into the bank but the proceeds must also be traced. It insists that appellee has wholly failed to make such proof in this case. On this question we think the proof clearly shows that at and prior to the time the Foster loan was made, at the time of its purchase by appellee, and at the time of the payment thereof and the issuing of the interest checks above mentioned, the said Frank H. Lowe was at all times an employee of said bank in the capacity of assistant cashier; that for the convenience of the bank an account designated ''Frank H. Lowe, Agent'' was created and used by the bank in buying land, taking over mortgages, buying up tax sales certificates, all in behalf of the bank and in making many other investments which would not go through the general books. The chief reason for the account was for avoiding action on the part of the board of directors in the handling of such matters and making the conduct of that particular business, on the part of the bank, more simple and direct. It is apparent from the testimony that this account had been carried on for many years in this particular manner and with the knowledge and approval of the bank and its officers. The money borrowed by the Fosters was the money of the Ridgely-Farmers State Bank; that the appellee in purchasing said loan paid the purchase price thereof to the bank; that the payment of the indebtedness by the Fosters on February 1, 1929, was a payment to the bank and that said Lowe, as an

assistant cashier of said bank, was authorized to make such collections; that he had previously, under the direction and with the knowledge of the officers of said bank, carried on similar transactions through this same account; that the payment received from the Fosters was deposited in this agent account and that being an established and recognized account of the bank its assets were thereby augmented in the sum of $5,000 and were held by the bank at the time of the appointment of the receiver; and that the payment to the bank of said sum was received by it as agent for appellee.

We, therefore, believe that the payment, by the Fosters, of the sum of $5,162.50 was for the specific purpose of paying the same to the appellee and thereby a trust relation was created between the bank and the appellee. In the case of *In re Receivership of National Bank of Ottawa*, 273 Ill. App. 545, the court said:

"It is immaterial how this fund came into the bank and it does not matter how the bank saw fit to carry it on its books. The bank obtained the fund."

If the Ridgely-Farmers State Bank deemed it wise and convenient to handle its various loan transactions through an account designated "Frank H. Lowe, Agent" it cannot deny that money paid into the bank and deposited in that account did not augment the assets of the bank. In the case of *People v. Bates,* 351 Ill. 439, 443, the court said:

"The modern doctrine as now established is, that where the form of trust property is changed by a fiduciary and the proceeds mingled with the mass of the assets comprising his insolvent estate the *cestui que trust* may resort to the mass if augmented by the trust property."

Appellant further urges that even if the money were traced into the bank by the evidence in this case, it

was traced out again before the receiver took charge. It states that Lowe was finally shown to have been discharged from the bank upon being discovered to be some $64,000 short in his accounts. It further shows that upon the witness stand Lowe testified that neither the appellee nor the bank got the proceeds from the Foster check, and that therefore the clear inference is that the bank never secured the proceeds of said check. However, the testimony of Lowe clearly shows that this money was deposited in his agent account and while he may have been a defaulter and short in his accounts there is no proof to show that the Foster money was directly misappropriated by him. The testimony of the witness Ridgely Watts, a former cashier of the bank, who checked over the accounts of Lowe, testified that he could find no evidence of the misappropriation of this particular fund. Appellant urges that the facts in this case are similar to those in the case of *Gaupp v. Colegrove & Co. State Bank,* 357 Ill. 499, but in that case the president, Colegrove, prior to the organization of the State Bank, while doing business as a private bank in Taylorville, accepted a sum of money in trust and upon receipt of the same promptly converted it to his own use without ever depositing it in the State Bank, which was subsequently formed to take over the private bank. The court held in that case the State Bank never at any time had the trust fund or any part of it in its possession or custody, nor was it ever in control of such fund, nor did it ever exercise or attempt to exercise any domination over the fund. In this case the money was paid directly to the bank and deposited in the F. H. Lowe, Agent account and at that time was under the domination and control of the bank. The testimony of Lowe that the Foster payment went through the same process, the agent account, as many other similar transactions and designated as bill receivable to the

bank, more than offsets his conclusion on the cross-examination that the bank did not get it.

We believe, from an examination of the entire record of this case, there was sufficient testimony to sustain the findings of the master in chancery and that the decree of the lower court ordering that the claim of appellee for a preference be allowed in the sum of $5,000 was proper and that said decree should be affirmed.

*Affirmed.*