(No. 19838▮

THE PEOPLE *ex rel.* Andrew Russell, Auditor of Public Accounts, *vs.* THE FARMERS STATE AND SAVINGS BANK OF GRANT PARK.—(ROBERT B. HAMMAN, Plaintiff in Error, *vs.* HARRY S. STREETER, Receiver, Defendant in Error.)

*Opinion filed February 21, 1930.*

Hunter & Minor, for plaintiff in error.

J. Bert Miller, (Harry S. Streeter, *pro se,*) for defendant in error.

Mr. Chief Justice Farmer delivered the opinion of the court:

The Farmers State and Savings Bank of Grant Park, Illinois, was closed by the Auditor of Public Accounts during the latter part of March, 1920. A bill in chancery was thereafter filed in the circuit court of Kankakee county by the State Auditor for the purpose of liquidating the affairs of the bank and Harry S. Streeter was appointed receiver. During April, 1928, Robert B. Hamman filed an intervening sworn petition in the same court, alleging that he was the duly appointed and qualified school treasurer of town-

ship 32 in Kankakee county; that he had previously filed with the receiver a claim against the bank for the sum of $5632, which amount was school moneys deposited by him in the bank as a trust fund belonging to the trustees of schools of that township; that the receiver had paid one-half of the amount claimed, and the petition prayed for an order of court directing the payment of the balance. The receiver filed a cross-petition, alleging, in substance, that various individuals, organizations and groups of persons, among whom was Hamman, claimed they had deposited money in the bank which should be preferred claims and have priority over all other claims filed because such deposits were trust funds. The cross-petition prayed that a hearing be had and that the court direct the receiver in making payment of the claims. A hearing was had and a decree entered finding the claim of Hamman was not a preferred claim and hence not entitled to any priority as to payment. From that decree Hamman perfected an appeal to the Appellate Court for the Second District, where the decree of the circuit court was affirmed. Upon application of Hamman this court granted a writ of *certiorari* to review the record.

There is no dispute as to the facts. The bank issued a pass-book to "Robert B. Hamman, Treasurer." Upon it appeared the words "Savings department," "Savings account," and "Four per cent interest on savings deposits compounded semi-annually." The pass-book shows two deposits, one of $5893.40 made on March 30, 1917, and another in amount of $880 made on April 13, 1918. There were five credits for interest, totaling $534.86, during the years 1917, 1918 and 1919, and six withdrawals of money during the same period. Three of the withdrawals were in the exact amount of three interest credits shown. The balance shown to the credit of the account on July 15, 1919, was $5632.73. Each time a deposit was made by Hamman the cashier of the bank was told that the money belonged

to the school fund, and the school treasurer stated he kept his own money separate and apart from the school money.

It is the contention of Hamman, to whom we shall hereafter refer as plaintiff in error, that he was entitled to preference or priority in payment over other creditors, first, because the moneys deposited by him constituted a trust fund, and second, because the title to the money was in the State, which is entitled to payment in full by virtue of its sovereign right. As to whether or not the account was a trust fund under the facts of this case depends primarily upon the kind of deposits made by plaintiff in error. There are but two kinds of deposits: special and general. The former include those where the bank becomes a trustee for a depositor by special agreement or under circumstances sufficient to create a trust, and general deposits are those where the bank merely becomes the debtor of the depositor. As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and to that extent the depositor becomes the creditor of the bank. Such deposit then constitutes a part of the assets of the bank, and in case of insolvency of the bank that deposit belongs to the creditors of the bank in proportion to the amount of their respective claims. Well recognized exceptions to this rule are, first, where money or other thing is deposited with the understanding that that particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used for a specifically designated purpose; and third, where the deposit itself was wrongful or unlawful. In the instant case the deposits made by plaintiff in error were known to be composed of school funds, but there was no request or direction on the part of the township treasurer to the bank that it should keep the funds separate from other money in the bank. The funds were placed in a savings account, and the fact that the bank agreed to, and did, pay interest

upon the account tends to show the bank's privilege of using the money without restriction. The record discloses no agreement whatever between the bank and plaintiff in error as to keeping the funds intact or their use and application for any particular purpose. The mere fact that a depositor makes a deposit in a fiduciary rather than an individual capacity does not make the deposit a special one. An affix to the name of the depositor in an account with the bank indicating that he holds the funds in a fiduciary character, such as the word "trustee," "agent," "guardian," "administrator," or the like, does not itself render the deposit a special one as distinguished from a general deposit. Moneys deposited in an account kept in that form would be more readily traced, and the bank, perhaps, would be chargeable with notice of the source from which the depositor derived funds which he directed to be credited to him in that way, but the addition of such words does not operate to change the character of the deposit from a general to a special one. (3 R. C. L. sec. 147, p. 518.) The question between the depositor and the bank is not what relation the depositor or his fund bears to some third party, but rather whether a trust relation has been created between the bank and the depositor in connection with the fund. In order to make a deposit a special one the bank must be made an agent rather than a debtor, and its agency or trusteeship cannot be created by mere external relationship of the debtor unless the deposit is wrongful or the law forbids the bank becoming a debtor.

Counsel for plaintiff in error cite *School Trustees* v. *Kirwin,* 25 Ill. 73, and *Woodhouse* v. *Crandall,* 197 id. 104, in support of the contention that a trust was created. In the *Kirwin case* a bill was filed by certain school trustees in Kane county to recover from the estate of a banker named Kirwin school funds deposited by one French, the township treasurer, in his own name. The school treasurer was also clerk and teller in the bank of Kirwin, who

knew that the deposits made were township school money and that they were mixed with the general moneys of the bank. One of the later amounts received and deposited by French to his credit was $1292.37. French died insolvent two days after Kirwin's death. Only $715.45 was found in the bank vault thereafter, none of which was identified as school funds except $275 in silver in a certain tagged or marked bag. This latter amount was preferred and awarded to the school trustees. The court made the statement that Kirwin was a voluntary trustee of the funds deposited by the school treasurer, but refused to permit recovery of the funds on general deposit in the bank. The court said, in substance, that the facts did not establish the identity of the fund, as it never appeared on the books of the bank as a part of the school fund or school money; that the deposit was mixed with other money belonging to the bank; that its identity had been lost, and the right to pursue the fund must fail. It will be observed that the facts in the case cited are not like those here involved, and we do not think it an authority applicable to the instant case.

In *Woodhouse* v. *Crandall, supra,* a deposit of $1500 was made in a Chicago bank by a lessee of certain property for the sole purpose, as shown by a receipt issued by the bank, of securing the lessee's faithful performance of the covenants in his lease. The banker mingled the funds with those of the bank but issued and retained a certificate of deposit therefor and pinned the same to the duplicate receipt issued by the bank to the lessee. The bank became insolvent, a receiver was appointed, and the parties interested in the lease sought recovery of the deposit made in the bank. This court stated that the deposit appeared only as a trust fund by the receipt which specified the trust and to which the certificate of deposit was pinned; that the deposit was for a specific purpose for the benefit and security of a third person, the lessor, and the bank assumed the position of a trustee and the money deposited constituted a

trust fund, which the bank was bound to keep intact for the purpose of the trust. There was but $1152 remaining in the bank when it failed and the receiver took possession, and this sum the court ordered the receiver to pay to those interested in the trust fund. That case involved a special deposit and is clearly distinguishable from the one we are here considering.

In the case of *Otis* v. *Gross,* 96 Ill. 612, a Chicago bank was by order of the circuit court of Cook county made a depositary of moneys in the hands of court officers and under their control. The bank by resolution accepted the trust. The clerk of court made deposits in the bank and had a book balance of almost $2600 when the bank failed. The deposits made by the clerk were kept on the books of the bank as all other savings accounts except as to payment of interest, the deposit or pass-book given the clerk was the same as those of other depositors and entries of deposits were made therein in like manner, and the money received by the bank was mingled with its other funds. The clerk of court sought to have the deposit declared a special deposit or trust fund and thereby secure payment in full from the receiver of the bank. This court held that there was no agreement or direction that the deposits made should be kept as a separate fund, that the moneys could not be held to be a special deposit, and that the money so deposited became that of the bank, which was liable for its re-payment the same as to any other creditor or depositor. We think no trust fund was created in this case as between Hamman and the Grant Park bank.

Under the second contention of plaintiff in error he insists that he, as township treasurer, is the agent of an involuntary quasi-public corporation, "Trustees of schools of township No. 32," created by the legislature for convenience in administering part of the governmental powers of the State; that such corporation is an agency of the State for the sole purpose of performing certain duties

necessary to the maintenance of an efficient system of free schools within the particular locality, in its jurisdiction; that money in the custody of the school treasurer belongs to the State and that payment of such funds is to be preferred over general creditors. Sections 19 and 20 of chapter 122 of our statutes (Smith's Stat. 1929, p. 2601,) provide that each congressional township shall be a township for school purposes, and that the school business of all school townships shall be transacted by three trustees to be elected by the qualified voters of the township. The trustees are declared to be a corporate body of perpetual existence, with power to sue and be sued. Among other duties and powers provided for by statute, the trustees are authorized by section 67 of said chapter to elect a treasurer, who shall also be *ex-officio* clerk of the board of trustees. He shall give a bond payable to the trustees for the faithful performance of his duties, which bond shall be approved by the trustees. The treasurer may also be removed from office by the school trustees. The township treasurer, by section 71 of the same chapter, is declared to be the only lawful depositary and custodian of all township and district school funds, and shall demand, receipt for and safely keep all bonds, mortgages, notes, moneys, effects, books and papers of every description belonging to his township.

From our investigation of the question of priority or preferred claims as applied to deposits of public funds, we find the following statement in Ruling Case Law (vol. 3, sec. 273, p. 644): "There is a conflict of opinion as to whether, in the absence of statute, there exists in any political subdivision a common law right to have its debts paid to it in preference to other creditors when the debtor is insolvent, but, as applied to insolvent banks in which deposits of public money have been properly made, the better rule seems to be that in the absence of statute or a showing of facts sufficient to create a trust a claim for public money has no preference over the claims of the general

creditors of the bank but stands on the same footing with them. On the other hand, it has been held by some courts that there is a common law right, in the absence of any statute, to have debts due to the State paid out of the estate of an insolvent debtor in preference to other creditors who are not protected by a special lien. The preference is based on the inherent right of a sovereignty to have its revenue protected for the general public good. And this, of course, would apply where public funds have been properly deposited in a bank which subsequently becomes insolvent."

This court is committed to the doctrine that the State, by virtue of its sovereign right under the common law, is entitled to priority over other creditors who do not have a lien in the collection of debts due the State. (*People* v. *Farmers State Bank,* 335 Ill. 617.) That case is relied upon by plaintiff in error in support of his second contention, that the school moneys belong to the State and are therefore a preferred claim. In that case, which is a consolidated case, the treasurer and *ex-officio* county collector of Henry county appointed deputy collectors for the purpose of facilitating the payment and collection of taxes in his county. Among the persons appointed for such purpose, and who gave bond therefor, was the president of a certain bank and the cashier of another bank. Each made collections of taxes and issued official receipts therefor amounting to several thousand dollars and deposited the collections in their respective banks in a general checking account to the credit of the county treasurer. Both banks were closed by the State Auditor, who filed bills in the circuit court for dissolution of the banks, and thereunder a receiver was appointed for each bank. The receiver of each bank was finally made the sole defendant in each of the two supplemental or amended bills filed by the People of the State of Illinois, and by Carl W. Peterson individually and as county treasurer and *ex-officio* county collector, whereby the complainants named sought to have the tax·

money collected and deposited declared preferred claims and entitled to priority over general creditors. The court stated in the opinion: "The debts which the State is seeking to collect in these cases are not a liability for taxes but are ordinary debts for money deposited—general debts, which would participate *pro rata* with all other general creditors except for the privilege of priority of payment which the State possesses. The existence of the right at common law cannot be doubted. It was an attribute of the crown—the sovereign. It is now an attribute of the people—the sovereign." The court further said: "Some contention is made that the bank was not indebted to the State but its indebtedness was to the county collector. The money for which it was indebted was taxes collected, and the bank had full knowledge of the source of the money. The political subdivisions of the State, whether counties, towns or school districts, for whose use the taxes were collected, are subject to the supervision and control of the State and their property and revenue are subject to the control of the legislature. The property of such corporations is public property in the hands of State agents for certain purposes and is subject to the will of the legislature. (*People* v. *Camargo School District,* 313 Ill. 321.) When necessary to enforce payment of taxes or special assessments by judgment and order of sale, it is provided by section 191 of the Revenue act that judgment shall be in favor of the People of the State of Illinois. The bond required of the county treasurer as county collector must run to the People of the State of Illinois. It is clear enough that until distribution, at any rate, to the various municipalities and political subdivisions, money paid for taxes is the property of the State." That case, under the facts stated in the opinion of the court, is authority for the proposition that money paid and collected for taxes is the property of the State until distribution thereof to the various municipalities and political subdivisions. However, we are

not disposed to extend that doctrine and make it applicable to tax money or alleged public funds which have been segregated, separated or delivered to the proper representative or custodian of each and every minute political subdivision or unit of the State, county or other municipality.

It is to be noted that the party seeking preference in this case is the township treasurer of township 32, while in *People* v. *Farmers State Bank, supra,* the State, and the county treasurer as such official and also individually, were complainants. It was the State's right of preference which was considered and discussed chiefly in the opinion in that case. A township treasurer is the custodian of the school funds of his township, and he gives bond payable to the trustees of schools for the faithful performance of his duties. He is an insurer of the funds coming into his possession as such officer. (*Thompson* v. *Board of Trustees,* 30 Ill. 99; *People* v. *McGrath,* 279 id. 550.) There is no showing in this record that plaintiff in error has reimbursed the township school fund for the money which he had on deposit in the bank. It is also worthy of note that sections 72-76 of chapter 122 (Smith's Stat. 1929, pp. 2609, 2610,) authorize the township treasurer to keep the principal of the township fund loaned at interest, and they recite some regulations in the care of the funds. The statute is here silent as to the deposit of funds in any regularly organized and solvent bank. It is provided that securities taken for money loaned are to be made payable to the trustees of schools in their corporate name, and in such name suits, actions and complaints of every description may be had for the recovery of money, breach of contracts, etc.

The further discussion of the record is unnecessary in view of our disposition of the two contentions made by plaintiff in error.

In our view the conclusions of the circuit and Appellate Courts were correct, and the judgment of the latter court is therefore affirmed.          *Judgment affirmed.*