(No. 21359.—<span style="background:black">        </span>

THE PEOPLE *ex rel.* Oscar Nelson, Auditor of Public Accounts, *et al.* Defendants in Error, *vs.* MARTHA MITCHELL BATES, Plaintiff in Error.

*Opinion filed February 23, 1933.*

HILL & BULLINGTON, for plaintiff in error.

E. E. DOWELL, for defendants in error.

Mr. JUSTICE JONES delivered the opinion of the court:

The H. N. Schuyler State Bank of Pana (hereinafter called the Schuyler Bank) was closed by the Auditor of Public Accounts on February 6, 1930, and A. W. Frankenfeld was appointed receiver. His appointment was con-

firmed by the circuit court of Christian county in a proceeding instituted by the Auditor for that purpose. Martha Mitchell Bates, plaintiff in error, filed an intervening petition in the receivership proceeding to give her a preference over general creditors as to her claim of $4725 against the bank. Upon a hearing the chancellor entered a decree allowing the preference. Defendants in error prosecuted an appeal to the Appellate Court for the Third District, where the decree was reversed and the cause remanded, with directions to enter a decree finding that Mrs. Bates is a general creditor of the bank and her claim should prorate with the claims of other general creditors. The cause is here on *certiorari* to review the judgment of the Appellate Court.

In the year 1914 plaintiff in error received as her distributive share in an estate at Medina, New York, a promissory note for the principal sum of $4500, secured by a mortgage on New York real estate. She lived at Oconee, Shelby county, Illinois, and for many years transacted her banking business at the Schuyler Bank. She received the note and mortgage through that bank, and they remained there from the time of their receipt until early in April, 1929, when the Schuyler Bank collected the note, together with a year's interest, amounting to $4725. The collection was made through a bank at Medina, New York, which issued a draft for $4725 on the Seaboard Bank of New York City, payable to the order of the Schuyler Bank. The draft was sent by the Medina Bank to the Schuyler Bank. The latter bank endorsed it and transmitted it to its correspondent bank, the Chemical National Bank of New York City, for deposit to the credit of the Schuyler Bank. This was done without the knowledge or consent of plaintiff in error. A large part of the deposit was withdrawn by the Schuyler Bank before it closed its doors. Mrs. Bates arranged with H. N. Schuyler, president of the Schuyler Bank, for the collection. She stated that he advised her to transfer the

loan to Illinois, because she could look after it better here. When the money was collected by the Schuyler Bank she was notified and went to the bank. No money was given her and no credit was placed to her account. She testified: "He told me he would put it out on a farm mortgage, and I left the money at the bank. He said he would put it out right away. He told me he would notify me as soon as he got the papers ready and would mail them to me, but he did not. I went back there and he said he had been busy and had not gotten the papers ready but would get them ready right away." After the lapse of some time she called at the bank and complained that she had nothing to show the money was there and would like to have something to evidence that fact. Thereupon, at Schuyler's direction, Miss Nelle Seiler, an employee of the bank, gave plaintiff in error a receipt as follows:

"H. N. SCHUYLER STATE BANK.

$4725.00           PANA, ILLINOIS, *April 27/29, 19..*

"Received from Mrs. Martha Mitchell Bates, forty-seven hundred twenty-five and no/100 dollars.

"To be invested in mortgage loans.

H. N. SCHUYLER STATE BANK.

N. S."

Shortly after the Schuyler Bank received the proceeds of the collection it made out a certificate of deposit, as follows:

*"Certificate of Deposit.*

Established January 1, 1876—Incorporated January 1, 1906. 70-348

No. 145737—H. N. SCHUYLER STATE BANK.

Capital $200,000.                      $4725.00

PANA, ILL., *Apr. 3, 1929.*

"Martha Mitchell Bates has deposited in this bank forty-seven hundred twenty-five and no/100 dollars, payable to the order of self on return of this certificate, properly endorsed.

H. N. SCHUYLER, *President.*

"This deposit not subject to check."

The bank never delivered the certificate to Mrs. Bates. She knew nothing of its existence. It was kept in a basket marked "Unfinished business." Miss Seiler testified: "As

I remember it, that draft was received by the H. N. Schuyler State Bank the last of March or early in April, 1929. It was quite likely received the same day I made out the certificate of deposit in this case, for we would have to issue the certificate to cover the draft when we cleared for New York. * * * After I made it out I kept it in my own letter-book most of the time, because it was something we were going to dispose of shortly. I did not keep it there for the purpose of sending it to Mrs. Bates." On February 13, 1930, the bank examiner in charge of the bank found this certificate of deposit, and sent it, with a letter written by him, to Mrs. Bates. Thus she received her first knowledge concerning the certificate. On May 10, 1930, she filled out a claim on one of the blanks furnished by the receiver. The claim was based on the certificate of deposit, but the receiver refused to file it because the certificate was not attached. Later she consulted a lawyer, who filed the intervening petition in this cause.

The material question is whether or not the transaction between plaintiff in error and the Schuyler Bank established a trust in the fund. In *People* v. *Farmers State Bank,* 338 Ill. 134, we said: "There are but two kinds of deposits: special and general. The former include those where the bank becomes a trustee for a depositor by special agreement or under circumstances sufficient to create a trust, and general deposits are those where the bank merely becomes the debtor of the depositor." In this case the money was not left at the bank to be credited to the general account of Mrs. Bates or as a time deposit. It was not subject to check and the bank had no right to mingle it with other funds. The receipt given to Mrs. Bates specifies the purpose for which the money was left and conclusively impresses it with a trust. No change in the status or form of the trust fund could without her consent divest it of the trust. (*Woodhouse* v. *Crandall,* 197 Ill. 104.) She is not compelled to look to the amount on deposit in the Chem-

ical National Bank to the credit of the Schuyler Bank for reimbursement. The fact that the Schuyler Bank deposited the money in a correspondent bank cannot abridge the right of plaintiff in error to recover it out of the mass of money left in the Schuyler Bank and which on the date of its closing was in excess of plaintiff's claim. It is the identity of the fund, and not the identity of the money or currency, which is to be established. It is not necessary, if the trust be money, that the particular coin or kind of money or the individual pieces shall be identified in order to pursue it, but it is the identity of the fund which must be preserved. It makes no difference, on the question of identity, that the fund was mingled with other moneys of the bank. So long as it can be identified, either as original property of the *cestui que trust* or as a product of it, equity will follow it, and the right to reclaim it fails only when the means of ascertaining its identity fails. (*Woodhouse* v. *Crandall, supra.*) The modern doctrine as now established is, that where the form of trust property is changed by a fiduciary and the proceeds mingled with the mass of the assets comprising his insolvent estate the *cestui que trust* may resort to the mass if augmented by the trust property. *Sorenson* v. *Farmers State Bank of Polk*, 121 Neb. 532, 237 N. W. 857; *Macy* v. *Roedenbeck*, 227 Fed. 346; *In re City Bank of Dowagiac*, 186 id. 250.

The decree erroneously ordered the receiver to pay plaintiff in error's claim within ninety days thereafter. It should have directed him to pay it as a preferred claim in due course of the administration of the receivership.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed in all respects except as to the directions concerning the method of payment of the claim, and as to such portion it is reversed and the cause is remanded to the circuit court, with directions to modify the decree by ordering the receiver, after paying all costs and charges of the recceivership, to pay in due

course of the receivership the amount found due plaintiff in error as a preferred claim and in priority of payment of other claims not now or hereafter allowed as preferred and before the payment of any general claims against such bank.

*Judgment of Appellate Court reversed.*

*Decree of circuit court affirmed in part
and reversed in part and cause
remanded, with directions.*