The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, v. Citizens State Bank of Creal Springs.

M. D. Borum, Intervening Petitioner, Appellee, v. F. H. Washburn, Receiver of Citizens State Bank of Creal Springs, Appellant.

the October term, 1933.                    Heard in this court at
                                            Opinion filed March
12, 1934.

FERRELL & HAY, for appellant.

D. L. DUTY and LEON A. COLP, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

Appellant is receiver of the Citizens State Bank of Creal Springs, now in course of liquidation. Appellee was a customer of said institution, who, on March 22, 1930, left certain funds at such bank, which he contends were in trust, and that same should be decreed a preferred claim in his favor. The chancellor, after a hear-

ing, so held, and this appeal by the receiver is to test the correctness of such holding.

It appears, from the evidence, that on said March 22, 1930, appellee left with the bank the sum of $2,600 to be invested in U. S. 4th Liberty Loan bonds, when he should so order. The cashier, R. M. Taylor, gave him a receipt therefor, showing that he had left such amount for such purpose. At the same time the moneys so left were mingled with the general funds of the bank by the cashier, who prepared a certificate of deposit, to order of appellant for such, with four per cent interest if the money should be left for four months. This he placed, with a duplicate of such receipt, in the vault, without the knowledge or approval of appellee.

The cashier testified that the funds were left to purchase Liberty bonds, when appellee was ready or should so order; that he informed the latter he would carry them in the certificate of deposit account, and if left for four months, that the bank would pay interest on same, and procure the bonds for him at any time he wanted them; that he did not inform appellee he would issue a certificate of deposit; that the latter did not know same was done, and that it was deposited in the vault; that he placed same in the files of the bank because there was no other place to carry it, except in the deposit account, and that it had to be there to show that the bank had that amount of money; that he understood, all the time the money was there, that it was left with the specific intent of buying Liberty bonds, and for no other purpose.

On March 28, 1931, appellee took his receipt to the bank, was paid interest at four per cent on the amount of the funds he had so left; was also paid $100 on the principal, and given a second receipt showing that the remaining $2,500 had been left to purchase U. S. Liberty Loan bonds. John Taylor, the assistant cashier,

who waited upon him, stated that appellee said he wished the matter taken care of in the same manner as the first transaction; whereupon he wrote out a certificate of deposit for $2,500, to order of appellee, reciting that same bore interest at four per cent, if left for four months. The assistant cashier stated that appellee saw him write out such certificate of deposit, which he placed in the vault with the receipt.

Appellee denies any knowledge of such certificate of deposit, or that anything was said concerning it. Neither certificate of deposit was ever delivered to him, and the latter one, together with the receipt, was in the files of the bank at the date it closed.

Appellee testified that on March 28, 1931, he asked Mr. Taylor why he had not been furnished with the bonds; that the latter said the bank had borrowed $10,000 from a bank in St. Louis, and was required to deposit three times the amount in collateral, which took all its bonds, but that when the debt was paid, it would take care of appellee as to the bonds. Taylor admits discussing the matter of the loan with appellee, but denies any promise to deliver bonds when its St. Louis loan should be paid.

W. H. Kimmel stated that he solicited appellee to remove his money from a bank in Marion, and deposit it in the Citizens State Bank of Creal Springs; that the latter expressed a willingness to do so if he could be accorded the same arrangement he had with the Marion bank, and which was that he should be given a receipt showing the moneys were left for the purpose of purchasing Liberty bonds, and which receipt he could exhibit to the assessor, so he would not have to pay taxes on the money. This was denied by appellee.

It is thus seen that if the testimony of appellee is true, the funds were left as deposit for a specific purpose; that is, for the purchase of government bonds; in which case title would remain in appellee, and not

pass to the bank, which would become a trustee of the moneys for the benefit of appellee, and which, upon failure of the bank, could be recovered as a trust or special deposit; *People v. Bates*, 351 Ill. 439; *Woodhouse v. Crandall*, 197 Ill. 104; 7 Corpus Juris, 631, sec. 307; in which event the issuance of the certificate of deposit, without the approval or knowledge of appellee, could not change the character of the deposit, nor divest it of the trust. *People v. Bates, supra.*

One of appellant's defenses was that the transaction was one of general deposit, and that appellee procured the issuance of the receipts as a subterfuge to enable him to appear to the assessor as having ordered Liberty Loan bonds with the money, and thus avoid its assessment and taxation. If such were the case, then of course there was no special deposit, and no preferred claim.

In support of such contention, appellant offered the testimony of the witness Kimmel, previously quoted, and while appellee was on the stand in rebuttal, to deny such statements, he further testified that previous to his dealing with the Creal Springs Bank, he had the same money in the State Bank of Marion. Appellant sought to cross-examine him as to the manner in which he had his money in the latter bank. Appellee interposed the objection that it was immaterial, which the court sustained. The ruling is assigned as error.

It will be observed that the only ground of objection stated is that the matter inquired for was immaterial. The objection, being specific, and based upon a single reason, is a waiver of all other points of objection which might have been made. *Village of Prairie Du Rocher v. Schoening-Koenigsmark Milling Co.,* 248 Ill. 57; *Terre Haute & Indianapolis R. Co. v. Voelker,* 129 Ill. 540.

We think the particular objection, here made, was not tenable, and that same should have been overruled.

Whether appellee's money was deposited in the Marion State Bank, under the same or similar circumstances that it was left with the bank at Creal Springs, was a very material matter. If the same arrangement was there pursued as at the latter bank, it would bear upon the question of whether the deposit was general or special, and whether the receipt, reciting that the funds were left to purchase U. S. Bonds, was a subterfuge, as contended by appellant. If the examination had disclosed that the deposits in the two banks were under the same arrangement, it would have been corroborative of the testimony of the witness Kimmel, and as such, testimony in favor of appellant.

The fact that other exceptions might have been taken to the question cannot avail appellee. Having elected to object specifically that it was immaterial, he waived all other grounds which he might have urged against its admission. The question was valid as against the objection made, and should have been allowed; and inasmuch as the effect of its refusal was to deprive appellant of a material element of its defense, the order must be reversed, and the cause submitted for a further hearing.

As the cause will be remanded, we deem it proper to comment upon the fact that there is no proof in this record, of any money on hand, belonging to the Creal Springs Bank at the date of its closing, or on any day between such time and the day when appellee left his money with the bank. The proof shows that the moneys were mixed with the general moneys of the bank; hence, if they were left in trust, they could only be paid out of the fund in which they were identified as having been placed; and if such fund, into which they were traced, had been disposed of, no charge could be made against the general assets of the bank. *Woodhouse v. Crandall, supra,* at page 116.

The authorities hold that the priority, in case of a trust fund so held by an insolvent bank, is restricted to the smallest amount of money on hand between the commingling of the trust fund with the general fund, and the closing of the bank. *People v. Auburn State Bank,* 215 Ill. App. 133, 140, 141; *People v. State Bank of Iuka,* 229 Ill. App. 4, 13; *Macy v. Roedenbeck,* 227 Fed. 346, L. R. A. 1916 C 12.

Here, there is no proof as to the amount of the general funds of the bank, with which appellee's moneys were mixed, between the time of deposit and the bank's closing; hence, even if the money which he left was a trust fund, it could not be known whether such general fund, existing after the funds were mixed, was sufficient to satisfy appellee's claim, either wholly or in part.

While this question was not raised, we consider it proper to make mention of the fact, so that proper proof, relative thereto, may be made upon the rehearing of the cause.

The order is reversed, and the cause is remanded for a further hearing, in accord with the views herein expressed.

*Reversed and remanded.*