The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, Complainant, v. Citizens Trust and Savings Bank et al., Defendants.

Cora Drepiere, Intervening Petitioner and Appellee, v. Erwin J. Zuehls, Receiver of Citizens Trust and Savings Bank, Respondent and Appellant.

**Gen. No. 37,077.**

Opinion filed June 15, 1934.

EDWARD J. HESS, for appellant.

CHARLES H. CHAPMAN, for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On August 4, 1930, the Citizens Trust and Savings Bank, an Illinois banking corporation doing business in Chicago and hereinafter referred to as the bank, was closed by the auditor of public accounts of Illinois and thereafter Erwin J. Zuehls became its receiver. On April 8, 1932, Cora Drepiere, claiming that she

was entitled to a certain trust fund of $5,000, as a preferred claim on the bank's assets, filed in the present cause an intervening petition, to which on May 16, 1932, the receiver filed an amended answer. Upon a reference to a master, and after some testimony had been taken before him, Mrs. Drepiere, by leave of court on December 14, 1932, filed an amended petition in which she prayed that the court enter an order "directing the receiver specifically to execute and perform the aforesaid trusts and undertakings of the defendant bank, or, in the alternative, if he is unable so to perform, that the receiver be ordered to return to petitioner said sum of $5,000, and to receive from petitioner the aforesaid Justine Apartment bonds (which bonds petitioner now tenders to the receiver); that it be decreed that the fund of $5,000 was held by defendant bank in trust for petitioner's use on certain trusts and confidences; that her claim is preferential; and that she may have such other and further relief," etc. Subsequently the court ordered that the receiver's amended answer to her original petition stand as the answer to her amended petition. On the hearing before the master petitioner testified in her own behalf, as did three other witnesses for her. Several witnesses called by the receiver also gave testimony and certain writings (including certain of the bank's records) were introduced. The master's report was filed on May 9, 1933. After reviewing the pleadings and the evidence, and making certain findings, he recommended that the court enter a decree in substantial accord with the prayer of petitioner's amended petition, and thereafter the objections of the receiver to the report were overruled and ordered to stand as exceptions before the court. On July 13, 1933, the court entered a decree in which, after approving and confirming the master's report and making numerous findings, it was adjudged that said fund of $5,000 is

held in trust by the receiver, for the use and benefit of petitioner; that the receiver pay to her said sum "upon the surrender of the 'Justine Apartment' bonds, aggregating the face value of $5,000''; and that said sum "be paid to petitioner, in the due course of administration, as a preferred claim." By the present appeal the receiver seeks to reverse the decree.

Among the findings in the decree are the following in substance:

That for several years prior to September, 1928, petitioner had purchased from the bank numerous "individual mortgages," among which was a certain mortgage known as the "Young mortgage," which was called for payment, and on which there was paid to the bank the sum of $10,000, for the use of petitioner, who was the legal owner and holder of the mortgage; that out of said fund of $10,000, petitioner purchased and received from the bank another mortgage, called the "Johnston mortgage," amounting to $5,000; that on September 18, 1928, the bank had in its possession for petitioner's use the remainder of said fund of $10,000, to wit, the sum of $5,000; that on said date the bank delivered to petitioner certain "Justine Apartment" bonds, aggregating at their face value $5,000, "with the express provision and understanding that it, the Bank, would procure with said sum of $5,000 an *individual first mortgage* of like amount for petitioner, within a reasonable time, and deliver the same to her in lieu of said 'Justine Apartment' bonds"; that petitioner "exercised only such acts of ownership over the 'Justine Apartment' bonds as were necessary to protect and preserve her rights, and such acts did not in any way prejudice the rights of the bank thereto, nor affect the terms of the aforesaid agreement between petitioner and the bank"; that on August 4, 1930, the bank was closed by order of the auditor of public accounts of Illinois, and the Chicago

Trust Company was appointed its receiver; that thereafter Erwin J. Zuehls was appointed as its successor receiver; that petitioner made repeated demands on the bank and its receiver and successor receiver "to deliver to her an individual mortgage in the sum of $5,000, in lieu of said 'Justine Apartment' bonds, *or* to pay to her said amount in cash"; that petitioner has at all times been ready and able to return to the bank, or to either of its said receivers, said Justine bonds, but that each and all of them refused her demands; that the sum of $5,000 "constituted a fund which became impressed with a trust as of September 18, 1928, for the use of petitioner, and continued to be a trust fund until the bank delivered to her an individual mortgage"; and that the bank, having failed and refused to perform said agreement, continued to hold said fund of $5,000 in trust for petitioner's benefit, for the purposes aforesaid.

After reviewing the evidence, including the testimony of petitioner (which was corroborated in some particulars by that of her witness, Carlos A. Life, who in September, 1928, was the manager of one of the departments of the bank and who, as admitted during the hearing, had authority to make such contract with petitioner as the court found was made), we are of the opinion that the court's above findings of fact (as distinguished from conclusions) are sustained by the evidence, but that neither the court's conclusions nor the decree in question is warranted by the evidence.

Counsel for petitioner contends that said verbal contract or arrangement of September 18, 1928, between petitioner and the bank was such as "to charge the bank as a trustee for said fund of $5,000, which it held for a *particular purpose* for petitioner's use." And in support of his contention he places much reliance upon the decision and holdings in the case of *People ex rel. Nelson v. Bates,* 351 Ill. 439, and authorities therein cited.

In that case it appears that on February 6, 1930, the Schuyler State Bank was closed by the auditor of public accounts and a receiver appointed; that Mrs. Bates filed a petition in the receivership proceedings praying for a preference over general creditors as to her claim of $4,725 against the bank; that after a hearing the circuit court entered a decree allowing the preference; that on appeal the Appellate Court for the Third District reversed the decree and remanded the cause with directions to enter a decree finding that Mrs. Bates was a general creditor of the bank and that her claim should pro rate with the claims of other general creditors; and that on certiorari our Supreme Court reversed the judgment of the Appellate Court and affirmed the decree of the circuit court in part and remanded the cause with directions. The facts of the case, as disclosed by the Supreme Court's opinion, are substantially as follows: For many years Mrs. Bates had transacted her banking business at the Schuyler Bank, and she had purchased a certain note and mortgage from the bank. About April 3, 1929, the amount of the note was collected by the bank, and upon her being notified of the fact she went to the bank and had a talk with its president, Schuyler, about the disposition of the proceeds, but no money then was given to her or credit placed to her account. She testified in substance that Schuyler stated to her that the bank "would put the money out on a farm mortgage" and would notify her as soon as the papers were ready; that she left the money at the bank; that not hearing anything from the bank she, after an interval, again called and Schuyler told her that the papers were not yet ready but soon would be; that after the lapse of another interval she again called and stated to Schuyler that "she had nothing to show the money was there and would like to have something to evidence that fact"; and that thereup the bank gave her a receipt,

dated April 27, 1929, to the effect that it had received from her "$4,725, to be invested in mortgage loans" (introduced in evidence). After the bank had collected the proceeds of the note and mortgage above mentioned, it made out a certificate of deposit, dated April 3, 1929, to the effect that Mrs. Bates had "deposited" in the bank $4,725, but which deposit was "not subject to check." The bank, however, never delivered the certificate to her or advised her of its existence. It was kept in a basket, marked "Unfinished business," and, after the bank was closed by the auditor, it was sent in a letter, dated February 13, 1930, to Mrs. Bates, when she first learned of its existence. In the course of the opinion our Supreme Court said (pp. 442, 443):

"The material question is whether or not the transaction between plaintiff in error and the Schuyler Bank established a trust in the fund. In *People v. Farmers State Bank*, 338 Ill. 134, 137, we said: 'There are but two kinds of deposits: special and general. The former include those where the bank becomes a trustee for a depositor by special agreement or under circumstances sufficient to create a trust, and general deposits are those where the bank merely becomes the debtor of the depositor.' In this case the money was not left at the bank to be credited to the general account of Mrs. Bates or as a time deposit. It was not subject to check and the bank had no right to mingle it with other funds. The receipt given to Mrs. Bates specifies the purpose for which the money was left and conclusively impresses it with a trust. No change in the status or form of the trust fund could without her consent divest it of the trust. (*Woodhouse v. Crandall*, 197 Ill. 104, 111.) . . . The modern doctrine as now established is, that where the form of trust property is changed by a fiduciary and the proceeds mingled with the mass of the assets comprising his in-

solvent estate, the *cestui que trust* may resort to the mass if augmented by the trust property.''

Counsel for receiver contend that the facts of the present case are materially different from those in the *Bates* case, in that it appears from the entire evidence in substance that, after petitioner had accepted from the bank the ''individual'' Johnston mortgage (thereby reducing the original $10,000 trust fund to $5,000), and after unsuccessful efforts had been made to procure for her another ''individual'' mortgage of $5,000, the bank *sold* to her at par certain ''Justine Apartment'' bonds, aggregating at face value $5,000, and she accepted said bonds as a purchaser, thereby fully terminating any existing trust relation as to said original $10,000 fund or any part thereof. As to whether there was a *sale* of the bonds to her the evidence was conflicting. Her testimony was to the effect that when the bonds were delivered to her they were only delivered *temporarily* and *until* another ''individual'' mortgage of $5,000, acceptable to her, could be obtained by the bank and that such mortgages were difficult to obtain. But it also appears from her testimony, and from other oral and written evidence, that for nearly two years before the bank was closed by the auditor she received and accepted the interest on the bonds as it matured every six months, and that on July 25, 1930, being in need of money, she borrowed $1,330 from the bank and put up as collateral for the loan two of said Justine bonds, aggregating at face value $1,500. These acts on her part indicate to us that said bonds were in fact sold to her and that at the times mentioned she considered herself the owner thereof. And it is our opinion that the decision and holdings in the *Bates* case are not here applicable; that it appears by a preponderance of the evidence in the present case that when petitioner filed her intervening petition there was no trust fund in the bank for

her use, and that, although a trust relation may formerly have existed as to the original $10,000 fund, such relation had been fully terminated; and that the court erred in entering the decree appealed from.

Accordingly, the decree of the superior court of July 13, 1933, is reversed, and the cause is remanded with directions to the court to dismiss petitioner's amended intervening petition for want of equity.

*Reversed and remanded with directions.*

SULLIVAN, P. J., and SCANLAN, J., concur.