The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts of the State of Illinois, v. Illinois Bank and Trust Company.

Hattie E. Hudelson, Appellant, v. Charles B. Albers, Appellee.

Opinion filed June 3, 1937.

HERBERT HAYS, of Carbondale, and WHAM & WHAM, of Centralia, for appellant.

WILLIAM H. HART, of Benton, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

On the 21st day of March, A. D. 1930, Hattie E. Hudelson delivered to the Illinois Bank & Trust Company of Benton, Illinois, Thirty-Three Thousand Dollars in pursuance of a written instrument, which is substantially as follows:

"RECEIPT AND DECLARATION OF TRUST.

"This Indenture made and entered into this the 21st day of March, A. D. 1930, by Illinois Bank and Trust Company of Benton, Illinois, a Bank and Trust Company duly organized and existing under the laws of the State of Illinois, and authorized and empowered to do a trust business, witnesseth:

"That whereas, Hattie E. Hudelson of Carbondale, Jackson County, Illinois, has this day delivered to the undersigned Bank and Trust Company at Benton, Illinois, the sum of thirty-three thousand ($33,000.00) dollars in cash, the receipt of which is hereby acknowledged and confessed, which sum is now a trust fund and shall remain a trust fund in the possession of the undersigned to be invested in such securities as the undersigned as trustee shall see fit, at its own risk, and hold the same as such trustee and convert the same from time to time into cash, so as to perform the requirements hereinafter stated; said bank to have no right, title or interest in or to said trust fund, but to hold the same in trust for the use of said Hattie E. Hudelson, her heirs, executors, administrators and assigns.

"In consideration of the premises, said Illinois Bank and Trust Company of Benton, Illinois, hereby covenants and agrees that out of said funds so held, to

pay said Hattie Hudelson the cestui que trust, the sum of three thousand ($3,000.00) dollars in cash one month from the date hereof, and out of said trust fund pay to her the sum of three thousand ($3,000.00) dollars in cash two months from the date hereof, and out of said trust fund pay to her the sum of three thousand ($3,-000.00) dollars in cash each month thereafter until said trust fund is wholly depleted and said thirty-three thousand ($33,000.00) dollars has been returned to said Hattie E. Hudelson; that in addition to said payments, said trustee will further pay to said Hattie E. Hudelson interest at the rate of 5 per cent per annum, payable quarter annually, on the trust property remaining from time to time in its care and supervision, no deduction to be taken from said payments for said services, same to be for the benefit of said Hattie E. Hudelson; that the relationship herein created shall be and remain in the nature of a trust, and that the relation of debtor and creditor between said parties is not created by this transaction.

"This declaration of trust to be for the benefit of said Hattie E. Hudelson, her heirs, executors, administrators and assigns.

"In testimony whereof the Illinois Bank & Trust Company, a corporation, hath hereunto caused its corporate seal to be affixed and these presents to be signed by its president and attested by its Cashier, this the 21st day of March, A. D. 1930, pursuant to the resolution of its board of directors."

The bank afterwards went into liquidation and at the time of this suit the assets were being administered by Charles H. Albers, successor to William L. O'Connell, receiver of said bank.

Proceeding was had in court to enforce the balance due of said $33,000 as a preferred claim against the assets of said bank. The court denied said claim preference, but allowed it as a general claim. It is from that judgment that this appeal is prosecuted.

No question is made with reference to the proper presentment of the claim. No dispute exists as to the facts involved.

Said bank was not at the time of receiving this amount of money qualified to do a trust business in Illinois. However, it represented itself to Mrs. Hudelson to be so qualified. Appellant relied upon this representation.

Upon the delivery of said amount of money the same was, without the knowledge or consent of appellant, placed in a general account and mingled with the assets of the bank. Each month thereafter until the bank's closing, appellant received payments as provided in and by said instrument. Thereby said fund was reduced to $15,000—the sum which appellant now claims as a preferred claim.

At the time of the acceptance of the fund the bank had cash assets consisting of $98,296.52 cash on hand and $254,433.22 in cash on deposit in other banks. At the time of the closing of said bank the actual cash assets consisted of $17,756.47, made up of cash on hand, cash on deposit in other banks, and overdrafts. The bank's cash resources were at their lowest ebb on the day immediately prior to the closing, when they aggregated the sum of $15,403.22.

The question to be determined is whether the delivery of the $33,000 as it was delivered was impressed with a trust, thereby entitling appellant to have the balance of her claim allowed as a preferred claim.

In *People ex rel. Russell v. Farmers State and Savings Bank of Grant Park,* 338 Ill. 134, our Supreme Court said:

"As to whether or not the account was a trust fund under the facts of this case depends primarily upon the kind of deposits made by plaintiff in error. There are but two kinds of deposits: special and general. The former include those where the bank becomes a trustee for a depositor by special agreement or under circum-

stances sufficient to create a trust, and general deposits are those where the bank merely becomes the debtor of the depositor. As a rule, when money is deposited in a bank, title to such money passes to the bank. The bank becomes the debtor of the depositor to the extent of the deposit, and to that extent the depositor becomes the creditor of the bank. Such deposit then constitutes a part of the assets of the bank, and in case of insolvency of the bank that deposit belongs to the creditors of the bank in proportion to the amount of their respective claims. Well recognized exceptions to this rule are, first, where money or other thing is deposited with the understanding that that particular money or thing is to be returned to the depositor; second, where the money or thing deposited is to be used for a specifically designated purpose; and third, where the deposit itself was wrongful or unlawful.''

The recitals that this fund was to be a trust fund and so continue and that the relation of debtor and creditor was not to exist are as plain as the English language can make them. There is no evidence in the record tending to deny, explain or modify these provisions. We must take them at their face value, as the understanding of the parties, or else conclude without evidence that the parties did not mean what they said. The only escape from this is to find something in the instrument itself or something in the conduct of the parties after executing the instrument which would make it appear that said instrument was not intended to be what it purports to be. There is nothing to indicate that appellant regarded the transfer of this money as a loan or a general deposit. She left it with the bank for the purpose of buying securities and no other purpose. True the bank was to be the judge of the securities in which the money was to be invested. This, however, is not unusual. People having little or no experience in financial transactions often leave to the

banks the advisability of investments. This money, in the mind of appellant at least, was to be applied for a specifically designated purpose. This being the case no conduct on the part of the bank could destroy the relationship of trustee and *cestui que trust* without the consent of the *cestui que trust. People v. Bates,* 351 Ill. 439. If the bank saw fit to deceive appellant in this transaction it would not change the bank's responsibility, as trustee. If it unlawfully and against its written agreement commingled this money with its other deposits, it would be a wrongful or unlawful deposit and impressed with a trust on that account. *People ex rel. Russell v. Farmer's State Bank, supra.*

The case of *People v. Bates,* 351 Ill. 439, recites the facts that Mrs. Bates had her bank, the H. N. Schuyler State Bank of Pana, collect a claim for her on a mortgage which she held in New York, for the sum of $4,725. Upon the collection of this money Mr. Schuyler of that bank advised her to make an investment in a mortgage in Illinois; that thereby she could handle it better. She agreed with him that the money should so be invested for her. Some time thereafter, she came back and complained that she had nothing to show for her investment. Thereupon Mr. Schuyler gave her the following:

> "H. N. Schuyler State Bank,
> Pana, Illinois, April 27/29, 19..
> $4725.00
> "Received from Mrs. Martha Mitchell Bates, forty-seven hundred twenty-five and no/100 dollars.
> "To be invested in mortgage loans.
> H. N. Schuyler State Bank,
> N. S."

Immediately after receiving the proceeds of this collection the Schuyler Bank made out a certificate of deposit, but left it in a pigeonhole somewhere and did not send it to Mrs. Bates. Afterwards a bank examiner

discovered it and sent it to her. Then she filed her claim to have the amount of her supposed investment allowed as a preferred claim. The Supreme Court, in passing on the case, held as follows:

"The material question is whether or not the transaction between plaintiff in error and the Schuyler Bank established a trust in the fund. In *People v. Farmers State Bank,* 338 Ill. 134, we said: 'There are but two kinds of deposits: special and general. The former include those where the bank becomes a trustee for a depositor by special agreement or under circumstances sufficient to create a trust, and general deposits are those where the bank merely becomes the debtor of the depositor.' In this case the money was not left at the bank to be credited to the general account of Mrs. Bates or as a time deposit. It was not subject to check and the bank had no right to mingle it with other funds. The receipt given to Mrs. Bates specifies the purpose for which the money was left and conclusively impresses it with a trust. No change in the status or form of the trust fund could without her consent divest it of the trust. (*Woodhouse v. Crandall,* 197 Ill. 104.) She is not compelled to look to the amount on deposit in the Chemical National Bank to the credit of the Schuyler Bank for reimbursement. The fact that the Schuyler Bank deposited the money in a correspondent bank cannot abridge the right of plaintiff in error to recover it out of the mass of money left in the Schuyler Bank and which on the date of its closing was in excess of plaintiff's claim. It is the identity of the fund, and not the identity of the money or currency, which is to be established. It is not necessary, if the trust be money, that the particular coin or kind of money or the individual pieces shall be identified in order to pursue it, but it is the identity of the fund which must be preserved. It makes no difference, on the question of identity, that the fund was mingled with other moneys of the bank.

So long as it can be identified, either as original property of the *cestui que trust* or as a product of it, equity will follow it, and the right to reclaim it fails only when the means of ascertaining its identity fails. (*Woodhouse v. Crandall, supra.*) The modern doctrine as now established is, that where the form of trust property is changed by a fiduciary and the proceeds mingled with the mass of the assets comprising his insolvent estate the *cestui que trust* may resort to the mass if augmented by the trust property. *Sorenson v. Farmers State Bank of Polk,* 121 Neb. 532, 237 N. W. 857; *Macy v. Roedenbeck,* 227 Fed. 346; *In re City Bank of Dowagiac,* 186 id. 250."

This rule was also followed by this court in the case of *People ex rel. Nelson v. Citizens State Bank,* 274 Ill. App. 468.

Holding as we do by authority of the aforesaid cases that this money was impressed with a trust, either by the understanding of the parties or by the unlawful act of the bank, we see nothing in point in the argument that the bank pledged its assets to secure this claim. Neither are we influenced to the point of decision, at least, with the fact that this money went back to the claimant, so much every month, with interest thereon,—that that destroyed the transaction as a trust and created the relation of debtor and creditor. As before said, though no cases have been cited in Illinois and maybe none has been adjudicated,—experience shows that this is not an unusual mode of procedure. It is entirely consistent with the investment of the fund in short loans at five per cent interest, payable in such manner as that appellant could have the amount monthly which she was to have.

Moreover, in many other jurisdictions it has been held that the collection of interest does not destroy the instrument as a trust instrument. *Andrews v. Hood,* 207 N. C. 499, 177 S. E. 636; *Conley v. Johnson,* 101

Mont. 376, 54 Pac. (2d) 585; *State ex rel. Sorenson v. American State Bank,* 126 Neb. 34, 252 N. W. 460.

We are of the opinion that the trial court erred in refusing to allow this claim as a preferred claim. We are likewise of the opinion that her claim is a lien upon the moneys now in possession of the trustee subject to the right of other claimants similarly situated as appellant to participate therein and that her claim is a preferred claim against other assets of the bank hereafter to be collected.

The judgment of the trial court is reversed and remanded with directions to that court to take further proceedings in harmony with the views herein expressed.

*Reversed and remanded with directions.*